**In re David E.W. LINES and Michael A. Jordan as Joint Provisional Liquidators of The River Plate Reinsurance Company Limited, Petitioners.**

**Bankruptcy No. 87 B 12188 (HCB).**

United States Bankruptcy Court, S.D. New York.

Jan. 15, 1988.

Howard, Darby & Levin, New York City, for petitioners; Jack Levin and C. William Phillips, of counsel.

Killarney, Rein, Brody & Fabiani, New York City, for debtor; Alan John Rein, of counsel.

Baker & McKenzie, New York City, for American Bankers Ins. Co. of Florida, Evanston Ins. Co., General Acc. Ins. Co. of America, and Mut. Fire, Marine and Inland Ins. Co.; Lawrence W. Newman and Charles Cummings, of counsel.

Michael E. Curan, Kelly, Roth & Hazen, New York City, for Reinsurance Co. of America; William H. Roth, of counsel.

Alan R. Katz, New York City, for Bankers Trust Co.

Before HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

## DECISION

Petitioners David E.W. Lines and Michael Jordan as Joint Provisional Liquidators of The River Plate Reinsurance Co., Ltd., ("River Plate") seek an order declaring that a winding up proceeding commenced before the Supreme Court of Bermuda is a foreign proceeding and that they are foreign representatives of River Plate within the meaning of §§ 101(22), 101(23) and 304 of the Bankruptcy Code, 11 U.S.C. §§ 101(22), 101(23) and 304 (1986). They further seek a preliminary injunction, pending the entry of an order granting relief under § 304 of the Bankruptcy Code, enjoining, *inter alia,* the commencement or continuation, including enforcement of any judgment and execution on any assets, of any action or proceeding against River Plate or its property. As confirmed at the hearing on November 16, 1987, they also seek to preliminarily enjoin Reinsurance Company of America ("RCA") and others from pursuing assets held by Bankers Trust Company pursuant to a trust agreement. None of those who have sued River Plate in the United States, except RCA, opposes the motion.

Upon the filing of a § 304 petition on November 10, 1987, this Court entered a temporary restraining order. The motion for a preliminary injunction was initially heard on November 16, 1987 when the court continued the temporary restraining order after hearing the parties. The motion came on for an evidentiary hearing on December 15, 1987 and was submitted on January 7, 1988 with the submission of RCA's proposed findings of fact and conclusions of law.

### I

River Plate is a reinsurance company organized under the laws of Bermuda and having its principal place of business at Hamilton, Bermuda. In order to sell reinsurance in the State of New York, *see* 11 NYCRR § 27.5(a)(i)(ii), River Plate, pursuant to a trust agreement (the "Agreement") dated as of December 7, 1977 between it and Bankers Trust, established a fund (the "Fund") of $1.5 million to be held by Bankers Trust. The Fund was to serve "as security for its American insureds and reinsureds whose claims may be payable in

currency of the United States of America ...", Agreement, p. 1, "first for the payment of claims under American policies and only thereafter for the return of unearned premiums." *Id.* at 4. Interest and other income generated by the principal belongs to River Plate, after payment of trustee expenses, *id.* at 12, and River Plate can direct the manner in which the Fund is to be invested. *Id.* at 8–9. River Plate can terminate the Agreement upon five years notice. *Id.* at 13. Upon termination, the balance of principal and income is to be paid to River Plate after payment of outstanding liabilities for incurred and unpaid losses and unearned premiums with respect to American insurance policies issued by River Plate. *Ibid.*

The Agreement restricts the enforceability of an American policyholder's claim against the Fund to compliance with all of the following four conditions: (a) issuance of an American judgment in favor of the policyholder and against the Company, (b) expiration of the time to appeal within the time permitted therefor or through the final disposition of any appeal or appeals that may be taken with respect to the judgment, (c) filing with the trustee of a certified copy of the judgment, and (d) expiration of a period of thirty days from the time of the filing with the trustee of the said certified copy of the said judgment without such judgment's having been satisfied. *Id.* at 4–5.

RCA apparently is a holder of an American policy issued by River Plate. In May 1987, it reduced to judgment in Illinois a prior arbitration award of $600,000. There is no assertion that any appeal is pending with respect to that judgment. Apparently, RCA thereupon registered the judgment in New York and on July 2, 1987 attempted to levy on the Fund. On September 2, 1987, it filed a certified copy of its judgment with Bankers Trust thus commencing the thirty day period provided by the Agreement. On October 13, 1987 it commenced a proceeding against Bankers Trust to compel payment of its judgment.

Other recent attempts to seize River Plate's assets in this country consist of a September 28, 1987 levy on Bankers Trust by American Centennial Insurance Company with respect to a judgment for $48,-799.42 obtained by it against River Plate on September 10, 1987 and entry of a provisional unconfirmed attachment by the district court for this district on September 22, 1987 at the behest of American Bankers Insurance Company of Florida and others on their $8,000,000 claim.

In the meantime, a petition to commence a winding up proceeding as to River Plate was filed in the Supreme Court of Bermuda on September 4, 1987. Petitioners David E.W. Lines and Michael A. Jordan were appointed Joint Provisional Liquidators by order of the Supreme Court of Bermuda entered on November 4, 1987. On January 4, 1988, that court ordered that River Plate be wound up and confirmed Lines and Jordan in their position.

A winding up proceeding in Bermuda has numerous features similar to provisions of the United States Bankruptcy Code and Rules of Bankruptcy Procedure. As governed by the Bermuda Companies Act of 1981, as amended in 1984, the winding up dated back to September 4, 1987, the date the petition was filed against River Plate. Companies Act § 167(2). The assets of a company in liquidation are distributed according to statutory priority. Administrative costs, taxes and wages (subject to certain limitations) are afforded a priority, secured claims are paid from the collateral according to their rank, and unsecured creditors are paid *pro rata*. Any surplus remaining is distributed to shareholders. Companies Act §§ 225–36. The Companies (Winding Up) Rules (1982) enable the liquidator to fix deadlines for filing claims upon no less than fourteen days notice. Rule 73. Each creditor, of any nationality, may prove its claim by affidavit in specified form which may be submitted by mail unless the court directs that any creditor or class of creditors may have its claims admitted without proof. Rule 64. A creditor whose claim is rejected must receive from the liquidator a written statement of the grounds for rejection and may appeal to the Supreme Court of Bermuda. Rules 74 and 75.

In addition, The Companies Act provides for avoidance of certain preferences and fraudulent transfers and the avoidance of any transfer, attachments and executions effected or completed after commencement of the proceeding. Companies Act §§ 166(2), 167(4), 241. Furthermore, the liquidator is to "take into his custody or under his control all property and things in action to which the company is or appears to be entitled." Companies Act § 174(1).

## II

The standard for a preliminary injunction in this circuit is a showing of irreparable injury and either (i) probability of success on the merits or (ii) the presence of sufficiently serious questions going to the merits and the balance of hardship tipping decidedly in favor of the movant. *Green v. Drexler (In re Feit & Drexler, Inc.)* 760 F.2d 406, 415 (2d Cir.1985). With respect to irreparable injury, we note that there appears to be little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury. While RCA asserts that it is good for return of the $600,000 it seeks, it does not seriously press the point in apparent recognition of the thesis that a trustee or liquidator is not to be required to chase such property. Rather, RCA concentrates its attack on the merits, asserting that River Plate, as a foreign insurance company, cannot be the subject of a § 304 proceeding and that the $600,000 of the Fund claimed

by it is not property of the River Plate estate under Bermuda law.[1] It is thus to a consideration of Petitioners' probability of success on the merits with respect to their § 304 petition and to these issues that we now turn.

## III

RCA's assertion that River Plate cannot qualify as a debtor under § 109(b) is plainly without merit. *In re Gee*, 53 B.R. 891, 899–900 (Bankr.S.D.N.Y.1985). In criticizing *Gee*, where Judge Brozman held that § 109(a) applies to § 304 petitions and § 109(b) does not, RCA states that the reasons for the differentiation "escapes us." (Mem. p. 6). But that differentiation flows directly from the wording of the statute.[2] Section 109(a) applies to all chapters. By their terms, Sections 109(b) and (d) only preclude certain entities, including foreign insurance companies engaged in such business in the United States, from being debtors under chapters 7 and 11 of the Code. By this, Congress intended to preclude the institution of full-scale bankruptcy cases and the application of the distribution scheme of Chapter 7 and the plan process of Chapter 11 to such entities "because they are bodies for which alternative provision is made for their liquidation under various State or Federal regulatory laws." S.Rep. No. 95–989, 95th Cong., 2d Sess. 31 (1977); *accord* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5817, 6275.

1. In its initial brief, RCA raised other issues which it has not pressed since becoming familiar with this Court's opinion in *Metzeler v. Bouchard Transp. Co. (In re Metzeler)*, 78 B.R. 674 (Bankr.S.D.N.Y.1987), where it was held that the estate involved in a foreign proceeding, including avoidance powers of a foreign representative, is defined by the foreign law applicable to the jurisdiction wherein the case is pending.

2. 11 U.S.C. § 109(a), (b) & (d) provide:
   (a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.
   (b) A person may be a debtor under Chapter 7 of this title only if such person is not—

   (1) a railroad;
   (2) a domestic insurance company, bank savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 USC 1813(h)); or
   (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

   .    .    .    .    .

   (d) Only a person that may be a debtor under Chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under Chapter 11 of this title.

An ancillary proceeding under § 304 is not a Chapter 7 proceeding or a Chapter 11 proceeding; nor is it a full scale bankruptcy proceeding. Thus, sections 109(b) and (d), by their terms, simply do not apply.[3]

## IV

The principal purpose of § 304 is to allow "foreign bankrupts to prevent piecemeal distribution of assets in this country by filing ancillary proceedings in domestic bankruptcy courts." *Victrix Steamship Co. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713–14 (2d Cir.1987); *accord, Cunard Steamship Co. v. Salen Reefer Service, A.B.*, 773 F.2d 452, 453–54 (2d Cir.1985). To accomplish that purpose, § 304(b) enables the bankruptcy court to

(1) enjoin the commencement or continuation of—

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property;

. . . . .

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

In deciding whether to exercise that power, the bankruptcy court is to consider the fairness factors set forth in § 304(c).

At the least, it appears at this stage that the Fund is property involved in a foreign proceeding for three principal and interrelated reasons. River Plate's reversionary interest in the Fund appears to be an ownership interest; that interest appears to have existed as of the date of the petition; and the interest covered the entire Fund since the thirty day waiting period required by the Agreement had not expired. More-

over, since the Trustee's showing with respect to these questions has raised serious issues of Bermuda law, it appears that the ultimate relief will likely be to afford the Bermuda court with the opportunity to define the River Plate estate and to resolve the issue of RCA's priority in determining the allowability and priority of claims by American policyholders against the Fund.

### A.

■ It cannot be gainsaid that the estate of a foreign debtor is defined by the law of the jurisdiction in which the foreign proceeding is pending. *Metzeler v. Bouchard Transp. Co. (In re Metzeler)*, 78 B.R. 674, 677 (Bankr.S.D.N.Y.1987). Other applicable law serves to define the estate's interest in particular property.

Here, the Agreement is to be construed in accordance with the law of the State of New York (Agreement p. 20) and it is not seriously disputed that on September 4, 1987, when the winding up petition was filed against River Plate, it retained, under New York Law, at least a legal interest to the entire Fund since the thirty days had not passed after RCA presented its certified judgment to Bankers Trust on September 2, 1987.[4]

■ Although RCA asserts that the estate has no interest in the $600,000 of the Fund RCA claims, RCA makes that assertion principally on the basis of the subsequent passage of the thirty day period from presentation of its certified judgment to Bankers Trust, the Fund trustee. This assertion is erroneous. Given that the period had not passed by September 4, 1987 and that River Plate expressly retained a reversionary interest, the liquidators had an interest in the Fund on that date pursu-

---

**3.** RCA misreads *Matter of Goerg*, 64 B.R. 321 (Bankr.N.D.Ga.1986) in contending that the court there applied § 304 petition. The court applied only § 109(a).

**4.** In its memorandum (pp. 8–9), RCA claims that, under New York law, its interest vested on October 3, 1987, upon completion of the thirty day period. In its Proposed Findings of Fact and Conclusions of Law, RCA asserts, without citation, that its execution and levy on July 2,

1987, transferred $600,000 from the Fund to it. In the same document, however, it proposes a finding that it only attempted a levy (p. 2), eschews reliance on its levy (pp. 5–6) in order to avoid the stay provided by § 167(4) of the Companies Act and asserts that it seeks only to "enforce its rights as a vested beneficiary of a trust fund." (p. 6). It does not explain how its rights had vested absent passage of the 30 day period.

ant to §§ 167(2) and 174 of the Companies Act. Section 167(2) provides that in all cases where the Company has not passed a resolution to voluntarily wind up its affairs, the winding up "shall be deemed to commence at the time of the presentation of the petition for the Winding Up." Section 174 provides for a liquidator to take custody of or control all property to which the company "is or may be entitled," § 174(1), and further provides that the Bermuda Court may direct "that all or any part of the property of whatsoever description belonging to the company or held by trustees on its behalf shall vest in the liquidator by his official name". § 174(2). It thus appears to define the bankrupt's estate under Bermuda law. Since the date of the petition governs, the liquidators apparently succeeded to River Plate's interest on September 4, 1987 when the thirty day period had not run and when no payment had been made to RCA.[5] We thus conclude that the petitioners have shown probability of success on the merits of their claim under § 304(b) that the Fund in its entirety is property involved in the foreign proceeding.

In disputing that conclusion, RCA asserts that River Plate had no interest in the Fund due to the presence of other American policyholder claims exceeding $8,000,-000. Significantly, no assertion is made that any of the other claimants has completed the steps required by the Agreement. Furthermore, the vast bulk of those claims were the basis of an attachment provisionally granted by the district court for this district and not confirmed. Thus, that attachment would appear to be avoidable under § 241 of the Companies Act which voids incomplete attachments.

RCA even more strenuously asserts that the filing of the winding up petition did not stop the passage of the thirty day period.

This contention would appear to have some merit but it does not affect the need for a preliminary injunction here.

Although learned Bermuda counsel has opined that the Supreme Court of Bermuda, largely on the basis of §§ 166(2), 241 and 174 of the Companies Act, could determine that RCA's claim to the Fund did not become enforceable due to the intervention of the petition within the thirty day period provided by the Agreement, that conclusion is not supported by examination of those statutes. Neither § 166(2) nor § 241 would appear to apply. Section 166(2) voids only a post-petition "attachment, sequestration, distress or execution put in force against the estate or effects of the company after the commencement of the winding up ..." Section 241 covers only incomplete prepetition executions and attachments. However, RCA has sued Bankers Trust as trustee post-petition. Thus, although any execution RCA would obtain as a result against the Fund would appear to be void under § 166(2), the right to priority in distribution over other American creditors having claims against the Fund devolves from delivery of the required documentation on September 2. Counsel also asserts that § 174's command that the liquidators take custody operates to stay the period. The opinion of Bermuda counsel submitted by RCA states to the contrary. Neither counsel, however, explains the basis of his opinion and the statute does not provide a stay on its face. If there is a doctrine of Bermuda law that interprets the requirement of taking custody as imposing a stay, it has not been brought to our attention.

But, even were it ultimately found that passage of the thirty day period was not stayed, the point remains that on September 4, 1987, when the involuntary winding up petition was filed against River Plate,

---

5. RCA erroneously contends that an order of this court granting a § 304 Petition in *In re Daniels*, No. 85–B–11147 (TLB) held that the estate of another Bermuda insurance company did not include a similar trust fund. The order and a subsequent letter appear to reflect a decision by the liquidators in that case to permit the N.Y. Superintendent of Insurance to take custody of the fund while claims by beneficiaries of the trust to the fund would be determined by the liquidators and limited to those allowed in the Bermuda proceeding. Thus, the fund was administered as part of the Bermuda proceeding. That the same course might occur here (Tr. pp. 27, 28, 53) hardly supports the proposition that the Fund is not property involved in the foreign proceeding.

the entire Fund, including the $600,000 claimed by RCA, was property involved in the Bermuda proceeding. If Bermuda law permitted RCA's claim subsequently to achieve priority or vest post-petition, the property is to be distributed accordingly in that proceeding.

### B.

Given the nature of the dispute, moreover, it also appears probable that relief will be ordered under the "other relief" clause of § 304(b). While this court has previously described that clause as enabling the bankruptcy court to grant relief in "blank check fashion", *In the Matter of Culmer,* 25 B.R. 621, 624 (Bankr.S.D.N.Y. 1982), no expensive view of the statute need be taken here to recognize that these unclear issues of Bermuda law can best be decided by the Bermuda court particularly since that court apparently adopted a procedure for handling claims against a similar fund established in New York by another Bermuda insurance company. *See* note 5 *supra.* Even were it not able to be ultimately determined with some finality whether the Fund is involved in the Bermuda proceeding, the purpose of § 304 is to enable the court in which the foreign proceeding is pending, provided the fairness factors of § 304(c) are met, to make that determination.[6]

### C.

We, therefore, turn to § 304(c). As applicable here, it provides that the bankruptcy court, in determining whether to fashion relief, "shall be guided by what will best assure an economical and expeditious administration" of the foreign estate consistent with just treatment of all claimholders, protection of United States claimholders against discrimination in the foreign proceeding, prevention of preferences and fraudulent transfers, distribution of estate proceeds "substantially in accordance with the order prescribed by this title" and comity.

That each of those factors applies here is virtually undisputed and the evidence is plain that all of those protections are afforded by Bermuda law. This Court has found markedly similar Bahamian winding up proceedings to afford all of these protections. *See In re Culmer,* 25 B.R. at 629–31. Comity surely requires that the Bermuda Court be given the opportunity to rule on the central issue of RCA's claim: namely, whether the passage of the thirty day period set by the Agreement is barred by Bermuda law. While affording comity to a foreign proceeding does not require a finding that the foreign court will grant comity to United States law, *Cunard,* 773 F.2d at 460, here, the undisputed evidence is that the Bermuda Court will interpret the Agreement under New York law, as the Agreement provides, if there is any doubt as to its meaning.[7] It is also undisputed that the Bermuda court will distribute the proceeds to the putative beneficiaries whose claims are allowed in that proceeding once it is determined whether RCA's claim is superior or equal to the others.

Petitioners have thus established the probability of the merits of their claim that the Fund is property involved in the Bermuda proceeding to be administered by the petitioners and distribution made after a determination of Bermuda law is made by the Bermuda Court. At this stage, moreover, it clearly appears that such a course is likely the most appropriate way to provide for a just determination of these matters. *See Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255 (S.D.N.Y.),

---

**6.** American Bankers Insurance Co. of Florida, Evanston Insurance Co., General Accident Insurance Co. of America and Mutual Fire, Marine and Inland Insurance Co. assert that Article 74 of the New York Insurance Law will govern the distribution of the Fund. That contention is grounded on the notion that the Superintendent of Insurance may commence a proceeding under that article. They further contend that N.Y. Ins. Law §§ 7414 and 7425(a) would void pref-erences and prepetition liens made or obtained within a four month period of the commencement of such proceedings. There is no evidence, however, that such a proceeding has been commenced.

**7.** The Agreement is straight forward and no such question has been identified.

*aff'd,* 614 F.2d 1286 (2d Cir.1979) (Court deferred action to Canadian liquidation proceeding); *Culmer,* 25 B.R. 621 (Court afforded comity to Bahamian proceeding and granted relief under § 304).

The foregoing constitutes this Court's findings of fact and conclusions of law. The motion for a preliminary injunction should be granted.

SETTLE ORDER.