In re Petition of G.C.K. TAM, as Joint Liquidator of the Estate of Asian Oceanic Holdings Limited, Debtor in a Foreign Proceeding.

Bankruptcy No. 94 B 40991 (JLG).

United States Bankruptcy Court, S.D. New York.

Aug. 22, 1994.

Morrison & Foerster, New York City, for petitioner.

Law Office of Michael W. Youkon, New York City, for Francis and Elizabeth Hunnewell.

### MEMORANDUM DECISION RESOLVING DISCOVERY DISPUTES AND ISSUE OF WHETHER LIQUIDATION OF AOHL IS A FOREIGN PROCEEDING FOR PURPOSES OF 11 U.S.C. SECTION 304

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Section 304 of the Bankruptcy Code (the "Code") authorizes a "foreign representative" in a "foreign proceeding" to petition the United States Bankruptcy Court to enjoin actions by creditors against a debtor or property of the estate, to compel the turnover of estate property, or to obtain other appropriate relief. 11 U.S.C. §§ 304(a) and (b). *See In re Petition of Trakman,* 33 B.R. 780, 783 (Bankr.S.D.N.Y.1983). This matter arises out of the § 304 petition, as amended, filed on behalf of a liquidator jointly overseeing the voluntary liquidation of Asian Oceanic Holdings Limited ("AOHL"), a Cayman Islands corporation, pursuant to §§ 131–148 of the Cayman Islands Companies Law (Revised 1990), as amended (the "Companies Law"). [Hereinafter, the "Cayman Liquidation"]. The issues presented are whether the Cayman Liquidation is a "foreign proceeding" for purposes of §§ 101(23) and 304(a) of the Code, and if it is, whether Frances O. Hunnewell, a creditor herein, is entitled to in-depth discovery with respect to the liquidators' conduct of the Cayman Liquidation. As explained below, we hold that the

Cayman Liquidation is not a foreign proceeding. Accordingly, the § 304 petition, as amended, must be dismissed. The discovery issues are moot and will not be addressed.[1]

### Facts

The facts are not in dispute. Asian Oceanic Holdings Limited is a corporation organized under the laws of the Cayman Islands, with its principal place of business in Hong Kong. On or about June 16, 1992, the shareholders of AOHL passed a Special Resolution pursuant to and in accordance with § 131 of the Companies Law and Article 40 of AOHL's Articles of Association that AOHL be wound up voluntarily. The Special Resolution also appointed Nicholas P. Etches and G.C.K. Tam, both of KPMG Peat Marwick Hong Kong, as liquidators, jointly and severally, for the purpose of winding up the affairs and distributing the assets of AOHL.

Among AOHL's assets is its interest in a cooperative apartment located at 30 E. 62nd Street, Unit 4C, New York, New York, together with 700 shares in and of Cumberland House Corporation (collectively, the "Co-op"), pursuant to a Declaration of Trust dated December 4, 1989, that was executed in AOHL's favor by Frances O. Hunnewell, an individual who served AOHL and Asian Oceanic Capital Corp. ("AOCC"), its affiliate, in different executive capacities between 1986 and May 31, 1992. On or about January 18, 1994, Hunnewell commenced a lawsuit (the "Hunnewell Action") against AOHL and AOCC in the New York State Supreme Court, New York County, seeking approximately $205,000 allegedly due under a severance agreement among Hunnewell and AOHL and/or AOCC. In connection with that litigation, Hunnewell moved pursuant to §§ 6201(1) and 6212 of the New York Civil Practice Law and Rules for an order of attachment of the Co-op. As filed, that motion was returnable on March 4, 1994.

---

**1.** This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(c), as made applicable herein by Federal Rule of Bankruptcy Procedure 7052 and 9014. Our subject matter jurisdiction is predicated on 28 U.S.C. §§ 157(a) and 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

The liquidators desire to sell the Co-op and distribute the sales proceeds to creditors in accordance with Cayman law. On or about March 3, 1994, G.C.K. Tam, as joint liquidator of AOHL, filed a Petition Pursuant to 11 U.S.C. § 304 to Commence a Case Ancillary to a Foreign Proceeding (the "§ 304 Petition"). Among other things, Tam seeks the entry of an order enjoining the continuation of, and staying and suspending all proceedings in, the Hunnewell Action as against AOHL. That day, Tam also moved by Order to Show Cause for an order pursuant to §§ 304 and 105 of the Code preliminarily enjoining Hunnewell from continuing to prosecute the Hunnewell Action against AOHL. That motion also sought the entry of a temporary restraining order ("TRO") preventing Hunnewell from taking action against AOHL in the Hunnewell Action pending a hearing on the request for a preliminary injunction. Hunnewell was given notice of the presentment of the TRO but declined to oppose it. After concluding that the underlying papers supported Tam's request for a TRO, we signed the Order To Show Cause (which incorporated the TRO) and scheduled the preliminary injunction hearing for March 8, 1994. On the return date, Hunnewell, by his counsel, consented to the entry of a preliminary injunction pending resolution of the § 304 Petition.

On March 18, 1994, Tam filed an Amended Petition Pursuant to 11 U.S.C. § 304 To Commence A Case Ancillary To A Foreign Proceeding ("Amended § 304 Petition") seeking substantially identical relief to that requested in the § 304 Petition. On or about April 15, 1994, Hunnewell filed his Response and Objection To Amended ·Petition Filed Pursuant to 11 U.S.C. § 304. Among the defenses to the Amended § 304 Petition asserted by Hunnewell were that the voluntary winding up does not qualify as a "foreign proceeding" for purposes of § 304 and that the liquidators had denied him any information relating to, among other things, the methods employed by the liquidators in selling AOHL's assets and the prices obtained for those assets. *See* Response and Objection To Amended Petition filed Pursuant to 11 U.S.C. § 304, pp. 4–5 at ¶¶ 1–3.

Thereafter, Hunnewell promptly moved pursuant to Bankruptcy Rule 2004 to conduct discovery relating to the liquidators' conduct of the Cayman Liquidation. Consistent with the issues raised in his response, Hunnewell argued that because the liquidation is not being conducted before a Cayman judicial or administrative tribunal, it is not a "foreign proceeding". For Hunnewell, if the petition is not dismissed, that lack of supervision justifies his obtaining access to the liquidators' books and records and the oral testimony of, among others, Messrs. Tam, Etches and Richard M. Bliss, formerly Chief Executive Officer of AOHL and a principal in Bliss Oceanic Holdings Limited, a shareholder of AOHL, to determine whether the liquidation was being conducted in accordance with Cayman law. Tam opposed Hunnewell's request for discovery. He disputed Hunnewell's thesis and urged that discovery was improper and unnecessary because the Cayman Liquidation should be recognized and accorded comity under § 304 of the Code. In Tam's view, matters relating to the conduct of the Cayman Liquidation should be addressed and resolved in the Cayman Islands. The parties agreed that in resolving the discovery dispute, we must determine whether the Cayman Liquidation is a "foreign proceeding" for purposes of § 304. They fully briefed both issues.

### Discussion

■ A company formed and registered under the Companies Law can be wound up at the behest of its members (i.e. shareholders), one or more of its creditors or contributories,[2] or any combination of the three. *See* Companies Law §§ 93, 131. Creditors and/or contributories seeking entry of an order winding up a company can do so only by petitioning the Grand Court of the Cayman Islands (the "Cayman Court"). *Id.* § 95. If the petition is granted and an order is made for winding up the company, the Cayman Court oversees all aspects of the liquidation. This procedure is known as a "Winding Up

---

**2.** The term "contributory" means every person liable to contribute to the assets of a company being wound up under Cayman law. *See* Companies Law § 88.

By Court". *Id.* § 93. The court may appoint an official liquidator to conduct the winding up. *Id.* § 105. The liquidator's compensation is fixed by the court, *id.* § 106(2), and all actions taken by the liquidator in furtherance of his statutory duties are subject to court approval. *Id.* § 108; *but see* § 109 (court may authorize official liquidator exercise powers enumerated in § 108 without sanction or intervention of the court). For cause shown, the court may remove the liquidator at any time. *Id.* § 106(1). Creditors and contributories have standing to be heard with regard to all matters relating to the winding up. *Id.* § 104. When the procedure is complete, the court issues an order that the company be dissolved, and from that date, the company is deemed dissolved accordingly. *Id.* § 123.

◼ A determination by shareholders to liquidate a company can be effected in one of two ways. Shareholders may resolve that the company be wound up by the court. In that event, it is treated as a Winding Up By Court. *Id.* § 93. Alternatively, shareholders may vote to wind up the company voluntarily. *Id.* § 131(b). That procedure is undertaken outside the jurisdiction of the Cayman Court.‣ *Compare id.* § 150 (order continuing voluntary winding up "subject to the supervision of the court", discussed *infra*, vests Cayman Court with jurisdiction over suits and actions as if under a Winding Up By Court). The liquidation is deemed commenced as of the date the shareholder resolution is passed, *id.* § 132, at which point the company ceases to carry on its business, except as is necessary to effectuate the winding up. *Id.* § 133. Except as otherwise provided in the shareholders' resolution, upon the commencement of the voluntary winding up, the company's directors cease to exercise any power over the affairs of the company. Rather, the liquidator or liquidators—who are selected by the shareholders, who exercise all of the rights conferred on them under the statute without the necessity of court review or order, and whose compensation is fixed by the shareholders—

wind up the affairs of the company and distribute its assets. *Id.* §§ 135(b), (c) and (g).

◼ Section 304 empowers a "foreign representative" appointed in a "foreign proceeding" to commence a "case ancillary to [that] foreign proceeding" by filing a petition in the bankruptcy court. 11 U.S.C. § 304(a). *See In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 348 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992); *In re Rubin,* 160 B.R. 269, 274 (Bankr. S.D.N.Y.1993). The Code defines a "foreign proceeding" as "[a] proceeding, whether judicial or administrative ... for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." 11 U.S.C. § 101(23).[3] The goal of the Cayman Liquidation is to wind up AOHL's affairs, liquidate its assets, pay valid claims, distribute remaining assets or the proceeds thereof to shareholders and dissolve the company. *See* Companies Law § 135. That end is consistent with the purposes ascribed to a foreign proceeding by the Code, a point which Hunnewell does not dispute. We are not aware that any court has considered whether it is a "foreign proceeding". *Compare Universal Casualty & Surety Co. v. Gee (In re Gee),* 53 B.R. 891, 897 (Bankr.S.D.N.Y.1985) (a Winding Up By Court under the Companies Law is a "foreign proceeding", and court appointed liquidator is a "foreign representative").

Although the liquidators selected by the company in a voluntary winding up are vested with the same powers accorded liquidators appointed by the Cayman Court in a Winding Up By Court, *see* Companies Law §§ 135(g), 108 and 109, they operate free from the supervision and control of the Cayman Court. *Id.* § 135(g). Accordingly, Tam concedes that the Cayman Liquidation is not a judicial proceeding. He insists that it nonetheless should be viewed as "foreign proceeding" because: (i) the liquidation is conducted under the aegis of the Registrar of Companies ("Registrar")[4] who must review and approve the actions taken by the Liqui-

---

3. A "foreign representative" is "[a] duly selected trustee, administrator, or other representative of an estate in a foreign proceeding." 11 U.S.C. § 101(24).

4. The Registrar is appointed by the Governor of the Cayman Islands. *See* Companies Law § 3.

dators before the company can be dissolved; (ii) creditors may petition the Cayman Court to review the actions taken by the liquidators; and (iii) the winding up is statutorily sanctioned by the Companies Law.

Hunnewell likens the liquidators in the voluntary winding up to a receiver enforcing a floating charge pursuant to a collateralized loan agreement.[5] He urges that because the receiver under a floating charge should not be viewed as a "foreign representative" with standing to file a petition under § 304, Tam likewise lacked standing to file the petition and it must be dismissed. During oral argument, Tam agreed that a receiver appointed under a floating charge is not a "foreign representative" for purposes of § 304.[6] He disagreed with Hunnewell's conclusion that the petition should be dismissed and differentiated between the conduct of a voluntary winding up under the Companies Law, and the acts of a receiver appointed under a floating charge to liquidate collateral. Tam is correct that there are differences. For example, a receiver appointed under a floating charge acts for the benefit of the secured creditor. See Rubin, supra n. 5 at 472. Conversely, liquidators appointed in a voluntary winding up are fiduciaries who must act in the best interest of the creditor body as a whole. See In re Corbenstoke, Ltd. No. 2, [1990] BCLC 60 (High Ct. of Jus., Ch.Div.).[7]

Moreover, while the Companies Law prescribes a methodology (including priorities) for satisfying creditor claims, the enforcement of a floating charge addresses the claim of one creditor which can be satisfied to the detriment of other creditors. Nonetheless, we do not agree that the Cayman Liquidation is a "foreign proceeding".

The term "proceeding" is not defined by the Code. Because there is no evidence to the contrary, we presume that Congress intended that it be given its ordinary meaning. See Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). That term is commonly interpreted as:

> the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment. Term also refers to administrative proceedings before agencies, tribunals, bureaus, or the like.

BLACK'S LAW DICTIONARY 1204 (6th ed. 1990). See also 1 AM.JUR.2D Actions § 3 at 542 (1964) ("[a]s ordinarily used, [the term "proceeding"] is broad enough to include all methods of invoking the action of courts ... and all possible steps in an action from its

---

5. In Commonwealth countries, a method frequently employed for collateralizing loans is for the borrower to grant the lender a "floating charge" over all its business and assets. See David A. Rubin, Canadian Comment: The U.S. Creditors' Unfair Advantage Over Canadian Creditors, 84 COMM. L.J. 470, 472 (1979) ("Rubin"). If the lender seeks to enforce its security, the floating charge is said to "crystallize" and attain the status of a final charge or lien. At that point, the creditor can appoint a receiver or manager who, under the security agreement, has the power of sale and management pending sale. Id.

6. Professor King suggests that the definition of a "foreign representative" is not broad enough to include a receiver or manager appointed under a floating charge. See Herzog and King, et al., Collier Bankruptcy Practice Guide ¶ 19.04[1], at 19-9 (1994). Accord John D. Honsberger, Conflict of Laws and the Bankruptcy Reform Act of 1978, 30 CASE W.RES.L.REV., 631, 652 (1980). Other commentators have taken the opposite position. See Charles D. Booth, Recognition of

Foreign Bankruptcies: An Analysis and Critique of the Inconsistent Approaches of United States Courts, 66 AM.BANKR.L.J. 135, 153 (1992) (" 'No American bankruptcy policy will be advanced by refusing [to permit a receiver privately appointed under a floating charge] to [file a § 304 petition]. Once this type of receiver has been appointed, liquidation will take place and American courts, in one way or another, need to consider whether comity will be extended to the foreign activity' ", quoting Douglas G. Bashkoff, United States Judicial Assistance in Cross-Border Insolvencies, 36 INT'L & COMP.L.Q. 729, 742–43 (1987)).

7. We understand that decisions of the Judicial Committee of the Privy Counsel are binding on the courts of the Cayman Islands and other Commonwealth countries. Cayman courts view decisions of other English and other Commonwealth courts as persuasive although not binding authority. See Smith v. Commissioner of Police, 1980–83 CAYMAN ISLANDS LAW REP. 126, 169–70 (Ct. of App.1981).

institution to the execution of judgment ...").

Courts have granted § 304 relief in cases where the underlying "foreign proceeding" was not a judicially sanctioned liquidation pending in a foreign court. In those instances, consistent with the commonly held notion of what constitutes a "proceeding", the liquidation was conducted under the auspices of an administrative authority charged with the duty of regulating the entity being liquidated. Thus, in *In re Banco de Descuento,* 78 B.R. 337 (Bankr.S.D.Fla.1987), the court held that the out of court liquidation of an insolvent Ecuadorian bank conducted by the Superintendent of Banks of the Republic of Ecuador pursuant to Ecuador's General Law of Banks was a foreign proceeding. *See* 78 B.R. at 338. Significantly, the liquidation was being carried out by the Bank Superintendent under a system which the court found similar to that used in the United States for liquidating insolvent state and national banks. *Id.* In *In re Ocana,* 151 B.R. 670 (S.D.N.Y.1993), the court granted injunctive relief under § 304(b) to a foreign representative in the reorganization of a Panamanian insurance company. The court took note that the reorganization under Panama law was a "statutory reorganization, a rough equivalent of bankruptcy, under the protection of the Panamanian National Reinsurance Commission." 151 B.R. at 671. *See also In re Koreag, Controle et Revision, S.A.,* 961 F.2d 341 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992) (parties stipulated that liquidation of a bank under the auspices of Swiss Banking Commission is a foreign proceeding for purposes of § 101(22), *see In re Koreag, Controle et Revision S.A.,* 130 B.R. 705, 711 (Bankr. S.D.N.Y.1991)).

■■■ The Registrar plays virtually no role in a voluntary winding up. Rather, it is conducted without any regulatory oversight and virtually no creditor participation. Under the Companies Law, creditors have no right to be heard on matters relating to the conduct of the winding up and are not entitled to discovery respecting the actions undertaken by the liquidators in connection therewith. The liquidators are under no obligation to report to creditors unless the proceeding continues for more than one year. Then they must conduct a general meeting of the company at the end of that year (and each succeeding year thereafter) and "lay before such meeting an account showing their acts and dealings and the manner in which the winding up has been conducted during the preceding year." Companies Law § 141. The statute imposes no other duty of disclosure on the liquidators until they complete their task and the affairs of the company are fully wound up. At that point they must "make up an account showing the manner in which such winding up had been conducted, and the property of the company disposed of", *id.* § 144, and "call a general meeting of the company for the purpose of having the account laid before them and hearing any explanation that may be given by the liquidators." *Id.* Although, as their final act in a voluntary winding up, the liquidators must make a return to the Registrar evidencing that they conducted the general meeting of the company mandated by § 144, *id.* § 145, the statute merely provides that on the expiration of three months after the date of the liquidators' registration of the return, the company shall be deemed to be dissolved. *Id.* The Registrar plays the same ministerial role in a Winding Up By Court. After the Cayman Court orders that a company be dissolved, *id.* § 123, the official liquidator must report the order to the Registrar "who *shall* make a minute accordingly in his books of the dissolution of such company." *Id.* § 124 (emphasis added).[8] The liquidators are conducting the voluntary winding up without oversight from the Registrar, or any other Cayman governmental agency, instrumentality or authority. As such, the Cayman Liquidation is clearly distinguishable from those cases involving non-judicial liquidations in which § 304 relief, or its equivalent, has

---

**8.** In both cases, the only sanction that can be levied against a liquidator who fails to comply with the reporting requirement is the imposition of a penalty not to exceed ten dollars for every day that the liquidators are in default. Compa-

been granted.[9] We find that it is not a "foreign proceeding" for purposes of § 304.

Contrary to Tam's assertion, during the course of a voluntary winding up, creditors have no right to be heard in the Cayman Court with respect to actions taken by the liquidators. *Compare* Companies Law § 104 (creditors and contributories have a right to be heard on matters relating to Winding Up By Court). The Companies Law does provide that creditors can petition the Cayman Court and request that the winding up be conducted pursuant to court supervision. *Id.* §§ 147, 150. If such a petition is filed and the Cayman Court finds that the rights of the petitioning creditors will be prejudiced by a voluntary winding up, the court may direct either that the company be wound up by the court or be wound up subject to the supervision of the court. *Id.* §§ 147, 149, 151.[10] In either case, the Cayman Court's jurisdiction is invoked and the liquidation *does not* continue as a voluntary winding up. Short of that occurrence, however, the Cayman Court does not sanction the actions taken by the liquidators. Filing a § 304 petition

does not initiate a case under title 11 of the Code. *See In re Axona Int'l Credit & Commerce, Ltd.,* 88 B.R. 597, 606 (Bankr. S.D.N.Y.1988), *aff'd,* 115 B.R. 442 (S.D.N.Y. 1990), *appeal dismissed,* 924 F.2d 31 (2d Cir.1991); *see also In re Petition of Brierley,* 145 B.R. 151, 159 (Bankr.S.D.N.Y.1992) (foreign debtor need not meet the eligibility requirements of § 109(a) of the Code as a prerequisite to obtaining relief under § 304.) Rather, it commences a case ancillary to the foreign proceeding "in which a United States bankruptcy court is authorized to apply its processes to give effect to orders entered in [that] foreign insolvency proceeding." *Goerg v. Parungao (In re Goerg),* 844 F.2d 1562, 1567 (11th Cir.1988), *cert. denied sub nom. Parungao v. Goerg,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989). Tam is not merely asking us to give effect to the unsanctioned actions of the liquidators—as opposed to a Cayman judicial or administrative tribunal—he is advocating that we give greater effect to those actions than the Cayman Court would be required to if the winding up proceeded subject to the supervision of that court. *Compare* Companies Law §§ 148, 153

---

nies Law §§ 125 (official liquidator); 145 (company appointed liquidator).

9. Although it is not a § 304 case, *Pravin Banker Associates, Ltd. v. Banco Popular del Peru,* 165 B.R. 379 (S.D.N.Y.1994) is instructive. In *Pravin,* an American citizen ("Pravin") purchased an interest in certain working capital obligations of Banco Popular del Peru ("Banco Popular"), a Peruvian bank. *Id.* at 382–83. When those obligations came due, the bank failed to pay them and Pravin declared a default. *Id.* at 383. Nearly one year later, acting under the authority of a Peruvian legislative decree, the Peruvian Superintendent of Banks determined that Banco Popular should be dissolved and its assets liquidated and a committee of Special Representatives was appointed by Peru's central bank to administer the dissolution procedures. *Id.* Thereafter, Pravin sued Banco Popular and the Republic of Peru seeking payment of the amounts due and owing. Pravin moved for summary judgment on its complaint and defendants cross-moved to dismiss or stay the motion. Alternatively, defendants argued that the motion for summary judgment should be denied on the grounds that Pravin had failed to prove essential elements of its claim. *Id.* at 380. The district court held that the motion should be stayed both because the Peruvian liquidation procedure satisfied American notions of fairness, *id.* at 385–86, and because United States policy interests mandated a stay of the action. *Id.* at 387–88.

In *Pravin* the underlying liquidation enjoyed characteristics similar to the "foreign proceedings" at issue in *In re Banco de Descuento,* 78 B.R. 337; *In re Ocana,* 151 B.R. 670; and *In re Koreag, Controle et Revision, S.A.,* 961 F.2d 341, all of which are missing in this case. Unlike this case, by legislative decree, the Peruvian bank liquidation proceeding was overseen by a government official (the Bank Superintendent) and, as of right, aggrieved parties could seek legal redress in the Peruvian Superior Court, with the right to appeal to the Peruvian Supreme Court (on procedural grounds only). *Id.* at 385–86.

10. Generally, the difference between those procedures is with regard to the degree of control exercised by the court. In a winding up subject to court supervision, the court has wide discretion to give effect to the wishes of creditors and contributories by fashioning remedies to meet the exigencies of the particular case. *Id.* § 151. The court may appoint additional liquidators, *id.* § 152, and can afford creditors access to the company's books and records. *Id.* § 158. However, the statute does provide that in a winding up subject to the supervision of the court, the Cayman Court is authorized "to exercise all ... power which it might have exercised if an order had been made for winding up the company altogether by the Court ..." *Id.* § 153.

(if the voluntary winding up is transformed into a "Winding Up Subject To Court Supervision", the Cayman Court is not bound by the actions taken by the liquidators during the course of the voluntary winding up). This furthers our conclusion that the Cayman Liquidation is not a "foreign proceeding" for purposes of § 304.

Tam is correct that courts have consistently held that laws derived from the British Companies Act, like the laws of the Cayman Islands, *see In re Gee,* 53 B.R. at 902, provide substantially the same protection as the Code and therefore can support a claim for relief under § 304(b).[11] *See, e.g., In re Rubin,* 160 B.R. at 282–83 (Israeli law); *In re Axona Int'l Credit & Commerce,* 88 B.R. at 610–11 (Hong Kong law); *In re Lines,* 81 B.R. 267, 273 (Bankr.S.D.N.Y.1988) (Bermuda law); *In re Culmer,* 25 B.R. at 631 (Bahamian law).[12] Moreover, there are similarities between the

---

**11.** Section 304(b) specifies the types of relief available to a foreign representative under § 304. Provided that the representative can establish that the relief requested "will best assure an economical and expeditious administration of the estate" consistent with the factors listed in § 304(c), the court may:

> (1) enjoin the commencement or continuation of—
> (A) any action against—
> (i) a debtor with respect to property involved in such foreign proceeding; or
> (ii) such property; or
> (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
> (2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
> (3) order other appropriate relief.

*See* 11 U.S.C. §§ 304(b). The factors enumerated in § 304(c) are:
> (1) just treatment of all holders of claims against or interests in such estate;
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
> (3) prevention of preferential or fraudulent dispositions of property of such estate;
> (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title [11 U.S.C. §§ 101 *et seq.*];
> (5) comity; and
> (6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304(c). Those factors are:
> guidelines ... designed to give the court maximum flexibility in handling ancillary cases. Principles of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case, rather than being provided with inflexible rules.

*In re Culmer,* 25 B.R. 621, 628 (Bankr.S.D.N.Y. 1982) (*quoting* H.R. No. 95–595, 95th Cong. 1st Sess. 324–25 (1977), S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978) 35, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5821) (footnote omitted).

**12.** Those cases are distinguishable because each involved a judicially supervised liquidation. Only *Lines* considered the scope of § 304(a), albeit for reasons completely unrelated to the issues raised herein. *In re Rubin* involved the liquidation of an Israeli reinsurance company. The underlying proceeding was pending in, and was fully supervised by, the Tel Aviv District Court. 160 B.R. at 272. There was no dispute that the liquidation proceeding was a foreign proceeding or that the liquidators had standing to bring the § 304 petition. *Id.* at 273. The company was not licensed by any state in the United States as an insurance company and never maintained an office here. It did participate in numerous insurance "treaties" with American insurance companies. Among the United States assets identified by the liquidators was a trust fund consisting of a $2 million letter of credit for the benefit of domestic insurance carriers. The liquidators sought to repatriate the fund for *pro rata* distribution among beneficiaries holding valid claims to the fund. Under the terms of the trust, however, a beneficiary/creditor, who had commenced an action against the reinsurance company to establish his rights under the trust, was entitled to satisfy his claim ahead of the allowed claims of the remaining beneficiaries. Thus, an issue encountered in *Rubin* which is not present here was whether the fund was part of the foreign debtors' estate. *Id.* at 275. The court granted the liquidators' petition, enjoined actions against the company and repatriated the fund. *Lines* involved the winding up of a reinsurance company in a proceeding before the Supreme Court of Bermuda. *See* 81 B.R. at 268. It, too, involved a dispute over the rights to a trust fund and the court enjoined the commencement or continuation of actions or proceedings against the fund. *See* 81 B.R. at 272–274. The court did consider the scope of § 304(a). However, it was in the context of rejecting a creditor's argument that the proceeding should be dismissed because the company was not eligible to be a debtor under § 109(b) of the Code. *Id.* at 271. In *Axona,* a winding up proceeding was pending in the Supreme Court of Hong Kong and an involuntary case under chapter 7 of the Code had been commenced in the bankruptcy

distribution scheme under Cayman law and the Bankruptcy Code.[13] Indeed, in the context of a Winding Up By Court, this court has held that although the Companies Law is not a carbon copy of the Code, it is not repugnant to American laws and policies and thus satisfies the criteria specified in § 304(c). *See In re Gee,* 53 B.R. at 904. Finally, as Tam notes, if he can avail himself to the injunctive relief available under § 304(b), and stay prosecution of the Hunne-well Action, he will avoid the piecemeal distribution of AOHL's United States-based assets in favor of the liquidation scheme set forth under Cayman law and thereby promote the economic and expeditious administration of AOHL's estate. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713–14 (2d Cir.1987); *Cunard S.S. Co. v. Salen Reefer Services AB,* 773 F.2d 452, 454–55 (2d Cir.1985); *In re Koreag,* 961 F.2d at 348. It does not follow that Tam's § 304 petition should be granted. Tam's argument elides the issue of whether the Cayman Liquidation is a "foreign proceeding". The statute is clear that "for a 304 petition to be properly filed, there must be both a foreign proceeding to which the 304 case will be ancillary, and a foreign representative who has filed the petition." *In re Gee,* 53 B.R. at 897. Thus, we cannot consider the merits of Tam's petition—however compelling they

may appear—without first finding that the Cayman Liquidation is a foreign proceeding. To do otherwise effectively writes § 304(a) out of the Code in violation of the general rule that "a court should not construe a statute in a way that makes words or phrases meaningless, redundant or superfluous." *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983).

Under these circumstances, we find that the Cayman Liquidation is not a "foreign proceeding" for purposes of the Code.[14]

### Conclusion

Based on the foregoing, the Amended § 304 Petition is dismissed. Hunnewell's request for discovery is denied as moot.

SETTLE AN ORDER.

---

court. *See* 88 B.R. at 598. There was no dispute that for purposes of § 304(a), the liquidators were foreign representatives and the winding up was a foreign proceeding. *Id.* at 603, n. 9. The court exercised its discretion and suspended the bankruptcy case in accordance with § 305(b) of the Code and directed the turnover of assets to the liquidators for distribution in the Hong Kong proceeding. *Culmer* involved the liquidation of Banco Ambrosiano Overseas Limited ("BAOL") in the Bahamas. *See* 25 B.R. at 622. In granting the liquidators' § 304 petition, the court issued injunctive relief and directed the turnover of BAOL assets in deference to the liquidation proceeding pending in the Bahamas Supreme Court. *Id.* at 627–34. The court held that the winding up was a foreign proceeding and that the liquidators were foreign representatives for purposes of the Code. *Id.* at 627, n. 2.

**13.** The Companies Law specifies that distributions of property are subject to the rights of preferred or secured creditors. Companies Law § 135(a). Certain general unsecured claims are

entitled to priority: "all rates, taxes, assessments or impositions imposed or made under the provisions of any Law applicable to the Islands; all wages or salary of any clerk or servant not exceeding one hundred dollars in respect of services rendered to the company during four months [prior to the commencement of the winding up]; and all wages of any workman or laborer not exceeding fifty dollars in respect of services rendered to the company during the two months prior to the [commencement of the winding up]. *Id.* § 161; *see also id.* § 146. As for other general unsecured creditors, the liquidators must as a rule treat their claims *pari passu,* but may pay classes of creditors in full or make such compromises or other arrangements if expedient. *Id.* §§ 135(a), 162. Fraudulent conveyances to creditors or fraudulent preference of creditors is prohibited. *Id.* § 167.

**14.** From that, it follows that Mr. Tam is not a "foreign representative" for purposes of § 304. *See* 11 U.S.C. § 101(24) *supra,* n. 3.