In re Petition of Herbert H. DAVIS, Trustee for Polinex Plastic Products Canada, Ltd., Debtor in a foreign proceeding.

In re Petition of Herbert H. DAVIS, Trustee for Packman Packaging Supplies, Inc., Debtor in a foreign proceeding.

Bankruptcy Nos. 95–B–42923, 95–B–42924.

United States Bankruptcy Court,
S.D. New York.

Feb. 1, 1996.

As Corrected Feb. 20, 1996.

Hebb & Gitlin, A Professional Corporation, Hartford, CT, for Herbert H. Davis, Trustee for Polinex Plastic Products Canada, Ltd., and Packman Packaging Supplies, Inc.

Rosner, Bresler, Goodman & Bucholz, New York City, for World Hangers, Inc., and Nicholas Glorioso.

### MEMORANDUM DECISION ON PETITIONER'S MOTION FOR SUMMARY JUDGMENT

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Polinex Plastic Products Canada, Ltd. ("Polinex") and Packman Packaging Supplies, Inc. ("Packman") are affiliated Canadian corporations which are the subject of separate bankruptcy cases pending in Canada under the Canadian Bankruptcy and Insolvency Act. Herbert H. Davis ("Davis" or "Petitioner") is the court appointed trustee in each case. In 1995, World Hangers, Inc. and Nicholas Glorioso (collectively "Glorioso") sued Petitioner, Packman and others in the United States District Court for the Southern District of New York (the "Action"). Among other things, the underlying complaint ("Amended Complaint") seeks damages from Petitioner and Packman on account of their alleged involvement in a scheme to defraud Glorioso. Although not a party to the litigation, Polinex is alleged to have been involved in that scheme. On or about July 3, 1995, Davis filed petitions (the "Petition(s)") under § 304 of the Bankruptcy Code ("Code") on behalf of Packman and Polinex, respectively, seeking judgment (i) pursuant to § 304(a) of the Code on the commencement of these cases, and (ii) granting him relief pursuant to §§ 304(b)(1) and 105 of the Code permanently enjoining Glorioso from commencing or continuing any action, litigation or proceeding, including discovery, against himself, Packman or Polinex anywhere in the United States. After the commencement of the ancillary cases, and in response to the motion filed by Petitioner on behalf of himself and Packman in the district court to dismiss the Action, Glorioso voluntarily discontinued that litigation, without prejudice, pursuant to Fed.R.Civ.P. 41(a). In doing so, Glorioso informally acknowledged that under Canadian law it is stayed from commencing or continuing litigation against Polinex or Packman and cannot sue Petitioner on account of actions taken by him subsequent to his appointment as trustee in the bankruptcy cases by the Canadian court without first obtaining leave from that court. However, Glorioso made it clear that it intends to bring suit against Petitioner in the United States on account of certain wrongs alleged against Petitioner in the Amended Complaint, to the extent that they purportedly relate to actions taken by him prior to his appointment by the Canadian court.

Petitioner seeks summary judgment on the Petitions. Glorioso objects to the motion and contends that the Petitions must be dismissed because that there is no justiciable case or controversy upon which we can act due to the voluntary discontinuance of the Action. For the reasons stated herein, Glorioso's objection is overruled and its request to dismiss the Petitions is denied. Petitioner's motion for summary judgment is granted.

### Facts

Polinex and Packman are the subject of separate proceedings pending under the Canadian Bankruptcy and Insolvency Act ("BIA") in the Quebec Superior Court, District of Montreal, Canada. Hong Kong Bank of Canada (the "Bank") is a secured creditor of Polinex and Packman. On January 4, 1995, the Bank retained Petitioner as a consultant to evaluate the corporations, their indebtedness to the Bank, and the Bank's collateral, and to report to the Bank on those items. On January 18, 1995, Polinex filed a "Notice of Intention To Make a Proposal" ("Notice of Intention") pursuant to BIA § 50.4 with the Office of the Superintendent of Bankruptcy (the "Superintendent"). On February 10, 1995, Packman did the same. Both notices identify Petitioner as "Trustee Under the Proposal". By Certificates of Assignment of the Superintendent dated April 7, 1995, and pursuant to BIA §§ 49 and 50.4(8), Polinex and Packman were deemed bankrupt retroactive to January 18, and February 10, 1995, respectively. After creditor meetings held in each case, on April 28, 1995, Petitioner was approved by the Canadian court as trustee for each debtor. On April 12, 1995, Petitioner gave notice to Glorioso and other creditors of the Polinex bankruptcy case.

On April 21, 1995, Glorioso filed an Amended Complaint in the Action. Petitioner and Packman are among the defendants therein. Although Polinex is not named as a defendant, Glorioso alleges, among other things, that Petitioner, Packman and Polinex participated in an intricate, continuing scheme to defraud Glorioso giving rise to causes of action in tort for fraud and pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*

On or about July 3, 1995, Petitioner commenced separate ancillary proceedings herein under § 304 of the Code on behalf of the corporations. By court order, those cases have been consolidated for administrative purposes only.

On or about July 24, 1995, Petitioner and Packman moved the United States District Court to dismiss the Action. Thereupon, Glorioso voluntarily dismissed it without prejudice pursuant to a Notice of Dismissal filed under Fed.R.Civ.P. 41(a). By letter dated on August 3, 1995, Glorioso's counsel advised that notwithstanding the voluntary dismissal of the Action, Glorioso would pursue, in the United States, the claims purportedly alleged in the Amended Complaint against Petitioner in his individual capacity. On or about August 9, 1995, Glorioso answered each Petition. As and for its first defense to the Petitions, Glorioso contends that because it filed the Notice of Dismissal, no case or controversy exists upon which this Court can act.

### Discussion

■■■■ Fed.R.Civ.P. 56(c) states that summary judgment " 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' " *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Movant bears the burden of establishing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In support of this motion, Davis has submitted a memorandum of law, an affidavit ("Davis Affidavit") and a Statement of Material Facts Pursuant to Local Rule of Bankruptcy Procedure 13(h). He is also relying on the Petitions and the identical affidavit of Mark Schrager, Esq., ("Schrager Affidavit"), his Canadian counsel, submitted with each Petition. Because Glorioso failed to challenge any portion of Petitioner's 13(h) statement, the facts therein are deemed admitted. *See* Local Rule 13(h) ("[a]ll material facts set forth in the moving party's [Rule 13(h) statement] are deemed admitted unless controverted by the opposing party's statement"); *see also In re Operation Open City,* 148 B.R. 184, 188 n. 3 (Bankr.S.D.N.Y.1992), *aff'd,* 170 B.R. 818 (S.D.N.Y.1994). A review of those facts, the Petitions, Glorioso's answers to the Petitions, and the Schrager and Davis Affidavits reveals that there is no genuine issue as to any material fact.

Glorioso does not dispute, among other things, that the filing of Notices of Intention (i) automatically stayed the commencement or continuation of all suits, actions and proceedings against Polinex and Packman respectively, *see* BIA §§ 69, 69.3, and barred the commencement of litigation against Petitioner in his official capacity, except by leave of the Canadian court. *See* BIA § 215. Glorioso maintains that notwithstanding the pendency of the foreign proceedings, it may sue Petitioner in the United States on account of wrongs complained of in the Amended Complaint and allegedly committed by him prior to his appointment as trustee in the Canadian proceedings. Petitioner argues that pursuant to §§ 105 and 304(b) of the Code, we should enjoin Glorioso from suing the debtors or himself in the United

States, irrespective of whether the litigation against Petitioner purports to seek relief against him individually or in his official capacity. He argues that by dismissing the Action without prejudice, and expressly, but informally, reserving the right to sue Petitioner in his individual capacity, Glorioso is having a significant disruptive effect on the Canadian bankruptcy cases due to the contingent liability of the Canadian estates for Glorioso's claims. Thus, Petitioner contends that in the interests of comity and the other factors enumerated under § 304(c) of the Code, we should acknowledge the pendency of the Canadian automatic stay and the protection afforded Petitioner and debtors under Canadian law, grant him judgment in each case and require Glorioso to assert any claims it may have against Packman, Polinex and Petitioner, or otherwise seek relief against them, in the Canadian courts.

Glorioso does not challenge Petitioner's proposed application of §§ 105 and 304(b). It contends that Petitioner's motion must be denied, and the Petitions dismissed, because by discontinuing the Action, Glorioso eliminated any case or controversy between itself, Packman, Polinex and/or Petitioner, thereby divesting this court of the power to adjudicate the merits of the Petitions.

■■■ A case under § 304 of the Code is not a full scale bankruptcy case. It is "a limited one, designed to function in aid of a proceeding pending in a foreign court." *Universal Casualty & Surety Co. Ltd. v. Gee (In re Gee)*, 53 B.R. 891, 898 (Bankr.S.D.N.Y. 1985) (citations omitted). *See also In re Lines*, 81 B.R. 267, 271 (Bankr.S.D.N.Y. 1988). Pursuant to § 304(a) of the Code, "[a] case ancillary to a foreign proceeding is commenced by the filing with a bankruptcy court of a petition under [§ 304] by a foreign representative." 11 U.S.C. § 304(a). Petitioner is eligible to seek relief herein because the pending Canadian bankruptcy cases are "foreign proceedings", *see* 11 U.S.C. § 101(23), and Petitioner is a "foreign representative." *See* 11 U.S.C. § 101(24). Our jurisdiction of the subject matter of this contested matter is predicated on 28 U.S.C. §§ 1334 and 157 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States

District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1410(a) because the Petitions were filed to enjoin continued prosecution of the Action.

■■■ The "case or controversy" limitation in Article III, section 2 of the United States Constitution is intended to

limit[ ] the business of the federal courts to 'questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process,' and it defines the 'role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of the government.'

*U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). "Justiciability" is the term "employed to give expression to the dual limitation placed upon federal courts by the case-and-controversy doctrine." *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). Among other things, "justiciability" embodies the doctrines of standing, ripeness and mootness. 392 U.S. at 94-97, 88 S.Ct. at 1949-51. We read Glorioso's objection to raise issues of mootness and ripeness.

■■■ The principal goal of a § 304 case is to permit foreign debtors "to prevent the piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors." *Koreag, Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision, S.A.)*, 961 F.2d 341, 348 (2d Cir.) (citations omitted), *cert. denied*, 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992); *In re Rubin*, 160 B.R. 269, 274 (Bankr.S.D.N.Y. 1993); *In re Lines*, 81 B.R. at 271 (same). Among other things, pursuant § 304(b) of the Code, a court is empowered to enjoin the commencement or continuation of litigation against a foreign debtor, *see* 11 U.S.C. § 304(b)(1)(A), provided the petitioner "establishes that the factors contained in § 304(c) militate in favor of granting an ancillary petition to best assure an economical

and expeditious administration of the foreign estate ..." *In re Rubin,* 160 B.R. at 281. *See also In re Banco Nacional de Obras y Servicios Publicos,* 91 B.R. 661, 664 (Bankr. S.D.N.Y.1988) (the injunctive relief available under § 304(b) "is not unlike the injunction which is automatic in a chapter 7 or 11 case pursuant to section 362 of the Code") (citation omitted). This furthers Congress' goal of providing "a mechanism for the courts in this country to aid foreign courts and accommodate the increasing number of foreign insolvency proceedings having extraterritorial effects within the United States." *In re Gee,* 53 B.R. at 896 (citations omitted); *In re Rubin,* 160 B.R. at 275 (same). Thus, Glorioso's objection to Petitioner's motion and to the Petitions ignores the plain language of the statute, Congressional intent in enacting § 304 and settled case law. *See, e.g., In re Lines,* 81 B.R. 267 (under § 304(b), court preliminarily enjoined commencement or continuation of any action or proceeding against assets of a foreign debtor); *see generally In re Culmer,* 25 B.R. 621, 624 (Bankr. S.D.N.Y.1982) (§ 304(b) enables bankruptcy court "to broadly mold appropriate relief in near blank check fashion ...").

Moreover, on the facts of these cases, neither ancillary case is moot and both are ripe for adjudication. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969); *see United States Parole Commission, et al. v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). The dismissal of the Action does not moot the relief sought in the Petitions because the dismissal was without prejudice and Glorioso concedes that it intends to litigate against Petitioner in the United States on matters raised in the Amended Complaint, albeit purportedly against Petitioner in his unofficial capacity. Petitioner need not await the commencement of that litigation to seek an injunction under § 304(b). *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923); *see Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). *See*

*also Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, ——, 113 S.Ct. 2297, 2301, 124 L.Ed.2d 586 (1993) (case not mooted by defendant's voluntary cessation of allegedly wrongful conduct where there was a reasonable expectation that defendant could simply repeat the conduct after the case was dismissed); *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982) ("a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice"); *compare United States v. W.T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (case may be mooted by voluntary cessation of alleged misconduct where defendant can demonstrate no reasonable expectation that wrong will be repeated).

A case that "present[s] a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract" is ripe for adjudication. *Railway Mail Ass'n v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945); *see also Goetz v. Crosson,* 728 F.Supp. 995, 998–99 (S.D.N.Y.1990) (ripeness doctrine requires that action in federal court be matured to a point that warrants decision). In determining whether a matter is ripe for adjudication, we must consider the hardship to the parties of withholding a judicial decision. Thus, "the question of ripeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration'." *Pacific Gas and Elec. Co. v. State Energy Resources Conserv. and Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). The undisputed goals of the Canadian bankruptcy law are to: (i) provide for the orderly and fair distribution of the property of a bankrupt amongst its creditors in an expeditious and inexpensive manner; (ii) ensure the orderly and fair administration of the bankrupt's assets; and (iii) ensure equal treatment of creditors. Schrager Affidavit ¶ 4. To further those

ends, the BIA imposes the following duties upon the Petitioner, as trustee of the Packman and Polinex estates:

(a) to take possession of all the bankrupt's property, *see* BIA § 16(3);

(b) to dispose of the bankrupt's property; *see* BIA § 30(1)(a);

(c) to convene meetings of creditors; *see* BIA § 102(1);

(d) to receive and examine proofs of claim received from creditors of the bankruptcy; *see* BIA § 135;

(e) to deal with claims of the creditors in accordance with the priorities established under the Canadian bankruptcy law; *see* BIA §§ 136, 148.

Although the BIA contemplates treatment of unsecured claims on a *pari passu* basis, *see* Schrager Affidavit ¶ 15, under that statute, as under the Code, administrative expenses are paid ahead of unsecured claims and immediately after secured claims. *Compare* BIA § 136, *with* 11 U.S.C. §§ 503, 507(a)(1). Those expenses include the expenses, fees and costs incurred by Petitioner in performing his duties. *See* BIA § 136(1)(b)(i), (ii). Among those are the costs of defending litigation brought against him in his official capacity, and any judgment against him in that litigation. Schrager Affidavit ¶ 16. The Bank, which appears to be a fully secured creditor of Polinex and Packman, is obligated to indemnify Davis for actions taken by him while serving as its consultant, prior to his appointment as trustee. Schrager Affidavit ¶ 19. To the extent the Bank does so, it can recover any payments as part of its fully secured claims in each case. *Id.* The pendency of the Action prevented Davis from making distributions to creditors and has increased administrative expenses in these cases. *See* Davis Affidavit ¶¶ 5–6. A delay in adjudicating the merits of the Petitions will compound that harm because Davis cannot make distributions in these cases until Glorioso's claims against him, Polinex and Packman are resolved. We find that the Petitions present justiciable issues, we overrule Glorioso's objection to the summary judgment motion and deny its motion to dismiss the Petitions.

Section 304(c) directs that in determining whether to grant relief under § 304(b), "the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns."

11 U.S.C. § 304(c). Section 304(c)(6) is irrelevant because the foreign debtors are not individuals. Glorioso has not challenged the merits of Petitioner's summary judgment motion. Application of §§ 304(c)(1)–(5) to the facts of these cases mandates that Petitioner be granted judgment under each Petition.

Denial of the injunction could result in Glorioso obtaining a preferential position vis à vis other creditors, at least with respect to Packman's estate. In contrast, by enjoining Glorioso from commencing or continuing litigation against debtors and the Petitioner, we will promote just treatment of all creditors by preventing the so-called "race to the courthouse" and preserve estate assets for the benefit of all creditors. *See In re Culmer*, 25 B.R. at 629 (bankruptcy court is "not obligated to protect the interests of fast moving American and foreign attachment creditors over the policy favoring uniform administration in a foreign court.") Given the debtor's contingent liability for any judgment taken by Glorioso against Petitioner, it is appropriate for any such litigation to go forward in Canada. *See In re Rubin*, 160 B.R. at 283 ("there is a distinct judicial preference for deferring to the foreign tribunal litigation respecting the validity of the amount of the claims against the foreign debtor") (citation

omitted). In his August 3, 1995 letter, Glorioso's counsel advised Petitioner's United States bankruptcy counsel that while Petitioner may "wish to cloak his conduct before the January 18, 1995 ... filing [of the Polinex Notice of Intention] with the limited immunity afforded him as Trustee" he would advise his client against "indulging [Davis] in that luxury." Thus, the scope of the protection afforded Petitioner under BIA § 215 is likely to be an issue in any litigation brought by Glorioso against Petitioner. The Canadian court is best able to determine the extent to which Petitioner's actions will be immunized by BIA § 215 and to balance Glorioso's rights against the impact of their exercise on the debtors' estates and other creditors. That is another reason why it is appropriate to enjoin litigation in the United States against Petitioner. *See In re Gercke,* 122 B.R. at 626–27 (English court best able to determine when and where claim determination should go forward). *See also Caddel v. Clairton Corp.,* 105 B.R. 366, 367 (N.D.Tex. 1989) (dismissing suit filed in violation of Canadian court-ordered stay of litigation against Canadian bank and court-appointed liquidator; observance of Canadian stay found to "further the same policies as those established by the automatic stay in 11 U.S.C. § 362"). Finally, in light of the disruptive effect that litigation is likely to have on the administration of the Packman and Polinex estates, we would frustrate the purpose of granting comity to the Canadian bankruptcy cases if we did not enjoin Glorioso from suing Petitioner in the United States. *See Allstate Life Insurance Co. v. Linter Group, Ltd.,* 994 F.2d 996, 1000 (2d Cir.1993) (affirming district court's dismissal of securities fraud suit against non-debtor individuals, as well as foreign corporate debtor, on grounds of comity because failure to dismiss case against individuals would undermine effect of granting comity to the debtor). By granting Petitioner the injunctive relief he is seeking herein, we will facilitate a prompt and efficient resolution of all claims against the debtors and an equitable distribution of assets to all creditors. That will ensure the just treatment of all claimants and interest holders, *see* 11 U.S.C. § 304(c)(1), and is consistent with the underlying policy of equality of distribution of assets to similarly situated creditors, which is promoted in the Bankruptcy Code. *See Cunard S.S. Co., Ltd. v. Salen Reefer Servs. A.B.,* 773 F.2d 452, 459 (2d Cir.1985); *Israel–British Bank (London), Ltd. v. Federal Deposit Ins. Corp.,* 536 F.2d 509, 513 (2d Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 486, 487, 50 L.Ed.2d 585 (1976); *In re Rubin,* 160 B.R. at 281.

 The mere fact that Glorioso would have to litigate its claims against debtors in Canada is not sufficient prejudice in and of itself to deny the relief sought in the Petitions. Such "prejudice" is typical of what any United States creditor in a sizeable domestic case would encounter when forced to litigate its claim in the bankruptcy forum. *In re Brierley,* 145 B.R. 151, 163 (Bankr. S.D.N.Y.1992). Courts in the United States require foreign creditors to litigate here when seeking distributions in a United States bankruptcy case. "It is thus difficult to label as so prejudicial and inconvenient to U.S. creditors as to warrant denial of injunctive relief that which we require of foreign creditors in our own cases." *Id. See also In re Rubin,* 160 B.R. at 282. The Canadian statutes accord creditors rights akin to what they would receive under the Code. For example, BIA §§ 124, 135 and 192 provide a claim filing and allowance procedure similar to that found under the Code. *Compare* 11 U.S.C. § 501 and Bankruptcy Rules 3001 and 3002. Moreover, "[t]here is no statutory provision which prefers the claims of [Canadian] citizens or residents or disfavors the claims of [non Canadian] citizens or residents." *In re Gee,* 53 B.R. at 903 (footnote omitted). *See* Schrager Affidavit ¶ 15. There is no dispute that the debtors may be liable for some or all of any judgment taken by Glorioso against Petitioner. There is also no dispute that if Glorioso continues its litigation against Petitioner individually, Petitioner's ability to perform his duties in the Canadian proceedings will be impaired to the detriment of all creditors. Petitioner's proposal that the Canadian court first address whether the Glorioso litigation should be continued does not impose any hardship on Glorioso that it might not experience in a

United States bankruptcy proceeding. Pursuant to §§ 362 and 105 United States courts will stay litigation against non-debtors not otherwise protected by the automatic stay when a failure to do so will work irreparable harm on the debtor's estate and creditors. In those cases one factor considered is whether the estate will bear the cost of any judgment taken against the non-debtor. *E.g., A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1007–08 (4th Cir.) (key personnel were unconditionally entitled to indemnification and additionally were insureds under debtor's insurance policy), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re North–Star Contracting Corp.,* 125 B.R. 368, 371 (S.D.N.Y.1991) (president of debtor entitled to indemnification such that any recovery by plaintiff would diminish debtor's assets). *See also Johns–Manville Corp. v. Asbestos Litig. Group (In re Johns–Manville Corp.),* 26 B.R. 420, 436 (Bankr.S.D.N.Y. 1983) ("[p]ursuant to § 105(a), the Bankruptcy Court may extend the automatic stay under § 362 of the Code and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete, or adversely affect property of Manville's estates or which would frustrate the statutory scheme of chapter 11 or diminish Manville's ability to formulate a plan of reorganization"). Courts have also extended the automatic stay to non-debtors where failure to extend the stay would jeopardize the success of the bankruptcy process. *E.g., A.H. Robins v. Piccinin,* 788 F.2d at 1008 (if lawsuits were allowed to proceed, efforts to comply with discovery requests would sidetrack management from the reorganization process); *In re Ionosphere Clubs, Inc.,* 124 B.R. 635, 642 (S.D.N.Y.1991) (stay may properly be extended to parties in interest to the reorganization where failure to do so would frustrate reorganization attempts); *In re Lomas Financial Corp.,* 117 B.R. 64, 67 (S.D.N.Y.1990) (stay of litigation proper where reorganization efforts would be stymied by distraction of key personnel who were targets of litigation); *In re Johns–Manville Corp.,* 26 B.R. at 426 (stay extended where targets of litigation were key operating personnel responsible for formulating plan of reorganization). Thus, Glorioso is

not prejudiced by being required to seek relief against Petitioner in the Canadian court, and § 304(c)(2) is satisfied.

Sections 304(c)(3) and (4) likewise are satisfied because the powers of the trustee to avoid preferences and fraudulent transfers under BIA §§ 95 and 96 are similar to those contained in §§ 547 and 548 of the Code, and the priority and distribution scheme under the BIA is akin to that contained in the Code. *Compare* BIA §§ 136, 148, *with* 11 U.S.C. §§ 507, 726.

 Finally, the principles of comity dictate that we defer to the Canadian cases and grant Petitioner judgment in these ancillary cases. *See* 11 U.S.C. § 304(c)(5). Comity is the "recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 163, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). The purpose of according comity to a foreign insolvency proceeding is to enable "the assets of a debtor to be disbursed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." *Cunard S.S. Co., Ltd. v. Salen Reefer Servs. A.B.,* 773 F.2d at 457–58. Comity is a discretionary principle of courtesy and expedience. *See Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (2d Cir.1984). "[U]nder general principles of comity as well as the specific provisions of section 304, federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat the claims of local creditors." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 714 (2d Cir. 1987). *See also The Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 629 (2d Cir.1976) (New York State courts will recognize the statutory title of an alien trustee in bankruptcy so long as the foreign court has jurisdiction over the bankrupt and the foreign proceeding has not caused injustice to New York citizens or prejudiced their statutory remedies, or violates laws or public policy); *Somportex, Ltd. v. Philadelphia Chewing*

*Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971) (comity should be withheld only "when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect"), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

 In determining whether to accord comity to a foreign bankruptcy case, we need not find that the foreign law is identical to our own. It is enough that it is not repugnant to American laws and policies. *In re Brierley,* 145 B.R. at 166; *In re Gee,* 53 B.R. at 904. The BIA contains a comprehensive procedure for the orderly marshalling and equitable distribution of a Canadian debtor's assets which closely resembles that available under the Code. For example, the principal duties of a trustee under the BIA mirror those imposed upon a chapter 7 or 11 trustee under the Code. *See* 11 U.S.C. §§ 704, 1106. Likewise, the automatic stay under the BIA § 69 is similar to that imposed by § 362 of the Code. Like the Code, the BIA recognizes the rights of secured creditors to realize on their collateral, protects that collateral from the claims of unsecured creditors and preserves the right of an undersecured creditor to assert a deficiency claim. It makes provision for the avoidance of fraudulent transfers or preferential payments, *see* BIA §§ 95, 96, and contains a comprehensive distribution scheme similar to that under the Code. *Compare* BIA § 69.3(2) (determination of secured status), § 127 (recognizing right to assert deficiency claim) and §§ 136–147 (priority of claims and scheme of distribution), *with* 11 U.S.C. § 506 (determination of secured status), § 507 (priorities) and § 726 (distribution).

 Courts in the United States uniformly grant comity to Canadian proceedings. *See, e.g., Canada Southern R. Co. v. Gebhard,* 109 U.S. 527, 539–40, 3 S.Ct. 363, 371, 27 L.Ed. 1020 (1883); *Cornfeld v. Investors Overseas Servs., Ltd.,* 471 F.Supp. 1255, 1260–62 (S.D.N.Y.), *aff'd,* 614 F.2d 1286 (2d Cir.1979); *Caddel v. Clairton Corp.,* 105 B.R. 366 (N.D.Tex.1989). This is consistent with the treatment accorded by federal courts to foreign proceedings in "sister common law jurisdictions". *See, e.g., In re Brierley,* 145 B.R. 151 (British proceeding); *In re Gercke,*

122 B.R. 621 (same); *Matter of Axona Int'l Credit & Commerce, Ltd.,* 88 B.R. 597, 609 (Bankr.S.D.N.Y.1988), *aff'd,* 115 B.R. 442 (S.D.N.Y.1990), *appeal dismissed,* 924 F.2d 31 (2d Cir.1991) (Hong–Kong proceeding); *In re Gee,* 53 B.R. 891 (Cayman Islands proceeding); *In re Culmer,* 25 B.R. 621 (Bahamian proceeding).

Section 304 does not specify irreparable injury as a predicate to the issuance of an injunction. "Arguably, comity—including consideration of upholding of international duty and convenience—may permit injunctive relief without the showing of irreparable injury to the debtor." *In re Rubin,* 160 B.R. at 283 (citing *In re Gercke,* 122 B.R. at 628). As noted, the prosecution of the Action already has prevented Petitioner from effectively administering these estates by, among other things, delaying distributions to creditors. Estate assets will be wasted if litigation proceeds against the debtors or Petitioner outside of Canada. Thus, Petitioner has demonstrated that the estates of Packman and Polinex will be irreparably harmed if injunctions are not issued. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709 (2d Cir.1987) (harm to the estate exists in the form of disruption of orderly determination of claims and the fair distribution of assets in a single case).

### *Conclusion*

Based on the foregoing, Petitioner is granted judgment on both Petitions. Glorioso is permanently enjoined from commencing or continuing any action, litigation or proceeding, including discovery, against Packman, Polinex and Petitioner, either in his official or individual capacity, anywhere in the United States.

SETTLE ORDER ON NOTICE.