# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 03-6070NE

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| National Warranty Insurance Risk | * | |
| Retention Group, d/b/a National | * | |
| Warranty Insurance Company, | * | |
| d/b/a/ National Warranty Insurance | * | |
| Group, | * | |
| | * | |
| Debtor in Foreign Proceedings | * | |
| | * | |
| Phyllis Hoffman, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Objector-Appellant | * | District of Nebraska |
| | * | |
| v. | * | |
| | * | |
| Theo Bullmore and Simon Whicker as | * | |
| Joint Official Liquidators, | * | |
| | * | |
| Movants-Appellees | * | |
| | * | |
| | * | |
| | * | |

———

Submitted: February 13, 2004
Filed: March 5, 2004

———

Before KRESSEL, Chief Judge, SCHERMER, and FEDERMAN, Bankruptcy Judges.

———

KRESSEL, Chief Judge.

Hoffman appeals from an order of the bankruptcy court[1] which granted National Warranty relief under 11 U.S.C. § 304(b) of the Bankruptcy Code. We affirm the bankruptcy court in all respects.

## BACKGROUND

National Warranty Risk Retention Group is incorporated under the laws of the Cayman Islands, with its principal place of business in Lincoln, Nebraska. The company was created under the provisions of the Liability Risk Retention Act, 15 U.S.C. §§ 3901-3906.[2] Since 1984, National Warranty has continued to be incorporated under the laws of the Cayman Islands, and it has been administered by a Cayman Island company, Crusader International, and regulated by the Cayman Islands Monetary Authority.

The principal activity of National Warranty consists of operation as a risk retention group that primarily insured group members who were obligated to contract

---

[1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

[2] The statute authorizes the creation of companies which are to be incorporated in and regulated by foreign jurisdictions, but which are authorized to sell product liability insurance in the United States, not to individual consumers, but to certain groups as defined by statute. The statute allows risk retention groups operating under the section to be recognized by federal and state law as an insurance company, but restricts the scope of state insurance company regulatory activity over the affairs of the risk retention group. Under the laws of the Cayman Islands, National Warranty is an insurance company. Under the laws of the United States, the individual states which regulate domestic insurance companies that are licensed to do business in each state, have limited authority over the business acts of entities such as National Warranty.

holders that had purchased Vehicle Service Contracts from those group members. The group members consisted of manufacturers, administrators, and automobile dealerships. As of March 2003, National Warranty had approximately five hundred and eighty group members.

The Vehicle Service Contracts that were issued by the various group members are more commonly known as Extended Warranty Agreements. When purchasing a new or used automobile, a consumer has the opportunity, presented by the automobile dealership, to purchase a contract to cover some or all repair cost on the various mechanical items associated with a motor vehicle. The dealer that sells the Vehicle Service Contract has obtained it from a marketing group authorized under the Risk Retention Act. That marketing group contracts with National Warranty to "insure" that when a consumer brings a vehicle into an authorized dealership for repair, the dealer may submit information concerning the needed repair to the administrator of the Vehicle Service Contract and obtain approval for the repairs and assurance that the administrator will pay for the repairs pursuant to the terms of the contract. The dealer then completes the repairs, submits a claim to the administrator on behalf of the consumer, and awaits payment. The administrator of the Vehicle Service Contract then pays the claim out of a fund created from a portion of the accumulated premiums received from the purchasers of the contracts. Such payment funds are referred to as reserves.

National Warranty contracts with a group that creates and markets the Vehicle Service Contract. When the initial contract concept is submitted to National Warranty, an analysis is completed by the company to enable it to determine the price it must receive in order to cover administrative costs and create the appropriate contribution to the reserve account which may eventually be called upon to pay the claim. National Warranty does not set the price of the Vehicle Service Contract. Either the marketing group or the dealership sets the price. When the contract is sold and the payment made to the dealership or marketing group, all or part of the contract

price is paid to National Warranty, which then distributes to the marketing group or dealership a commission and an amount to be used as the reserve account. National Warranty keeps a portion for its administrative costs, and if it has contracted to handle the complete administration of the Vehicle Service Contracts, it either takes possession of the reserve account held by the marketing group or it creates its own reserve account. When legitimate claims are made and authorized for payment, there should be sufficient funds in either the marketing group's reserve account or in a separate reserve account owned by National Warranty to enable payment of the claims.

During 2002 and early 2003, National Warranty became involved in disputes with one or more groups concerning the administration of the Vehicle Service Contracts and the adequacy or inadequacy of reserve accounts held by the marketing groups and National Warranty. The disputes became so significant that certain members refused to allow their reserve accounts to be used to pay claims, and National Warranty determined that its reserve accounts were insufficient to permit it to pay claims for which it was directly liable.

As a result, the officers of National Warranty decided to file a proceeding in the Cayman Islands analogous to a Chapter 11 bankruptcy case in the United States. In early June of 2003, shortly after a transfer of approximately $24,000,000, representing some or all of National Warranty's reserve held in the United States, to banks in the Cayman Islands, National Warranty filed a petition in the Grand Court of the Cayman Islands for an order winding up the company. An order was entered by the Grand Court appointing appellees Whicker and Bullmore as Joint Provisional Liquidators[3] of the company. The Grand Court also entered an order which enjoined

_____

[3] Under Cayman Islands law, the appointment of the Joint Provisional Liquidators terminated the authority of the directors of the company and put the operation of the company into the hands of the Joint Provisional Liquidators pending a final order. The duties of the Joint Provisional Liquidators were to review the status

all suits, actions, or proceedings of any nature whatsoever against the company until further order of the court, and stated that no future suits, actions or proceedings shall be commenced against the company without leave of the court. That order has no effect outside of the Cayman Islands.

On June 20, 2003, shortly after the appointment of the Joint Provisional Liquidators and the entry of the order, the Joint Provisional Liquidators filed in the District of Nebraska a petition under 11 U.S.C. § 304 of the Bankruptcy Code, requesting injunctive relief against the initiation or continuance of actions against the debtor with respect to property involved in the Cayman Islands proceeding. The bankruptcy court granted a temporary restraining order. Two objections were filed with regard to the temporary restraining order and its continuance or its conversion into a preliminary or permanent injunction. One of the objections was filed on behalf of Phyllis Hoffman, the purchaser of a Vehicle Service Contract.

On August 1, 2003, the Grand Court entered an order converting the case in the Cayman Islands from a provisional case to a liquidation case. The court then appointed the appellees as the Joint Official Liquidators, giving them full power under the laws of the Cayman Islands with regard to gathering assets of National Warranty and liquidating the assets for the benefit of creditors.

On August 5, 2003, a trial was held on the injunctive relief question. On August 19, 2003, the bankruptcy court issued an order which held that the domicile of National Warranty is the Cayman Islands and that the company was entitled to invoke 11 U.S.C. § 304(b) of the Bankruptcy Code. The bankruptcy court further determined that the terms of the temporary restraining order initially entered in the case would be made permanent.

---

of the company, determine its solvency, and to make further recommendations to the Grand Court with regard to whether the company could be reorganized or whether its should be liquidated.

## STANDARD OF REVIEW

We review findings of fact for clear error. *Christians v. Crystal Evangelical Free Church (In re Young)*, 82 F.3d 1407, 1413 (8th Cir. 1996); *Hartford Life and Accident Ins. Co. v. Henricksen (In re Henricksen)*, 227 B.R. 759 (B.A.P. 8th Cir. 2002). We review conclusions of law *de novo*. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000). We review a bankruptcy court's decision under 11 U.S.C. § 304 to enjoin certain actions and the enforcement of judgments against debtors involved in foreign bankruptcy proceedings or their property for an abuse of discretion. *See In re Petition of Singer*, 205 B.R. 355, 356 (S.D.N.Y. 1997); *see also Cunard Steamship Co. v. Salen Reefer Servs.*, 773 F.2d 452, 459 (2d Cir. 1985). An abuse of discretion occurs if the bankruptcy court fails to apply the proper legal standard or fails to follow proper procedures in making its determination, or if the court bases an award upon facts that are clearly erroneous. *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997). A finding of fact will not be reversed as clearly erroneous unless the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Wintz v. American Freightways, Inc. (In re Wintz)*, 230 B.R. 840, 844 (B.A.P. 8th Cir. 1999) (citing *Waugh v. Eldridge (In re Waugh)* 95 F.3d 706, 711 (8th Cir. 1996)).

## DISCUSSION

While the parties argue about numerous issues, we think the issues on appeal can be summed up in three questions.

## 1. IS THERE A FOREIGN PROCEEDING?

The first issue we address is whether the ancillary proceeding under 11 U.S.C. § 304 is proper. Section 304 provides in pertinent part:

> (a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

11 U.S.C. § 304(a). Hoffman argues that § 304 is inappropriately invoked because the Cayman Islands liquidation is not a "foreign proceeding" and that National Warranty is not a foreign entity but a company with assets in the United States and creditors in the United States. Moreover, Hoffman argues that the term "domicile" as it is used in § 304 refers to the center of a company's business activities rather than its place of incorporation. We disagree.

11 U.S.C. § 101(23) defines a "foreign proceeding" as:

> [a] proceeding whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

11 U.S.C. § 101(23). The only serious question raised by Hoffman is whether National Warranty has its domicile in the Cayman Islands.[4] In interpreting a statute, we look first to the plain language of the statute. Where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (citing *Caminetti v. U.S.*, 242 U.S. 470 (1917)). "'The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Kolich v. Antioch*

---

[4] While not discussed by the parties, we wonder whether, after National Warranty transferred its entire reserves of some $24,000,000.00, its principal assets may also have been in the Cayman Islands.

*Veterinary Hosp. (In re Kolich)*, 328 F.3d 406, 409 (8th Cir. 2003) (quoting *Ron Pair Enter., Inc.*, 489 U.S. at 242).

The Bankruptcy Code plainly states that a foreign proceeding is a proceeding in a foreign country in which the debtor's domicile is located at the commencement of such proceeding. The Eighth Circuit has held that a corporation's domicile is where it was originally incorporated. *U.S. v. Orshek*, 164 F.2d 741, (8th Cir. 1947). Additionally, bankruptcy courts have consistently held that in order to determine a corporation's domicile, one must look to the place of its incorporation. *See Underwood v. Hilliard (In re Rimstat, Ltd.)*, 98 F.3d 956, 960 (7th Cir. 1996); *In re Segno Communications, Inc.*, 264 B.R. 501, 506 (Bankr. N.D. Ill. 2001); *Taylor v. Green Tree Fin. Serv. Corp (In re Taylor),* 260 B.R. 548, 558 (Bankr. M.D. Fla. 2000); *In re FRG, Inc.*, 107 B.R. 461, 471 (Bankr. S.D.N.Y. 1989).

Hoffman asks us, as she asked the bankruptcy court, to depart from this well settled law and adopt a more "modern" view of domicile consistent with the law of the European Union and proposed Chapter 15 of the Bankruptcy Code.[5] Like the bankruptcy court, we decline the invitation, believing such a change is best left to Congress.

National Warranty is domiciled in the Cayman Islands. The company was incorporated in the Cayman Islands in 1984, has continually maintained its status as a Cayman Islands company since that date, and was a Cayman Islands company on June 4, 2003, the date the winding up petition was filed. Moreover, when the petition under 11 U.S.C. § 304 of the Bankruptcy Code was filed by the Joint Liquidators, a foreign proceeding, as that term is defined under the Code, was pending in the Cayman Islands. Thus, § 304 was properly invoked.

---

[5] Apparently, there is legislation pending in Congress which Hoffman argues would in essence change the definition of a foreign proceeding.

## 2. IS INJUNCTIVE RELIEF APPROPRIATE?

The next issue we address is whether the bankruptcy court abused its discretion in granting National Warranty injunctive relief under 11 U.S.C. § 304(b). Section 304(b) provides:

> (b)     Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may–
> (1)     enjoin the commencement or continuation of–
>> (A)     any action against–
>>> (i)     a debtor with respect to property involved in such foreign proceeding; or
>>> (ii)   such property; or
>> (B)     the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
> (2)     order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
> (3)     order other appropriate relief.

11 U.S.C. § 304(b). The factors to be considered when deciding whether to grant such relief are set forth in 11 U.S.C. § 304(c). This section states:

> (c)     In determining whether to grant relief under subsection (b) of this section, the court shall be guided by

what will best assure an economical and expeditious administration of such estate, consistent with–

> (1)    just treatment of all holders of claims against or interests in such estate;
> (2)    protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
> (3)    prevention of preferential or fraudulent dispositions of property of such estate;
> (4)    distribution of proceeds of such estate substantially in accordance with the order prescribed by this title[6];
> (5)    comity; and
> (6)    if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.[7]

11 U.S.C. § 304(c). Regarding the first three criteria, the bankruptcy court found: (1) there would be just treatment of all holders of all claims against or interest in the estate because Cayman Islands' insolvency laws and practice assume that most creditors are foreign and the law is designed to facilitate their claims justly and without discrimination. Claim forms are sent to every creditor of the debtor known to the official liquidators, and if a claim is not allowed, there is an official notification process as well as a comprehensive appeals process; (2) there would be no prejudice or inconvenience in the processing of claims in the foreign proceeding, because the Cayman Islands Companies Law provides for uncomplicated claim filing and allowance procedures, which makes unnecessary the procedure of allowing claims to be administered in the United States; and (3) the preferential disposition of property of the debtor's estate is not a concern because under the Cayman Islands Companies Law, all ordinary unsecured creditors are treated equally irrespective of the nature of

---

[6] The appellants do not address this factor.

[7] This section applies to individuals and therefore is not applicable.

10

their claims, and local creditors do not have a preference or a priority over U.S. or other foreign creditors. Moreover, the fraudulent disposition of property of the estate is not a concern because there are provisions under the Cayman Fraudulent Dispositions Law to set aside dispositions of a company's property at less than fair value made with the intent of defeating the claims of creditors. Such findings by the bankruptcy court are amply supported by the extensive record and are not clearly erroneous.

Regarding the issue of comity, the bankruptcy court found that comity should be accorded to the foreign proceeding. Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching on the laws and interests of other sovereign states. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 544 (1987); *see also Emory v. Grenough*, 3 Dall. 369, 370, n., 1 L.Ed. 640 (1797); *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (stating that the doctrine of comity is based on respect for the sovereignty of other states or countries, and under it the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there). The purpose of according comity to a foreign insolvency proceeding is to enable "'the assets of a debtor to be disbursed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.'" *In re Petition of Davis*, 191 B.R. 577, 586 (Bankr. S.D.N.Y. 1996) (quoting *Cunard S.S. Co., Ltd. v. Salen Reefer Servs*. A.B., 773 F.2d 452, 457-58 (2d Cir. 1985)). "[U]nder general principles of comity as well as specific provisions of section 304, federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat the claims of local creditors." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987). Comity should be withheld only "when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex, Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971), *cert. denied*, 405 U.S. 1017 (1972). In determining whether to accord comity to a foreign bankruptcy case, a court need not

find that the foreign law is identical to its own, it is enough that it is not repugnant to American laws and policies. *In re Petition of Davis*, 191 B.R. at 587; *Universal Cas. & Sur. Co. Ltd. v. Gee (In re Gee)*, 53 B.R. 891, 904 (Bankr. N.Y. 1985); *In the Matter of Culmer*, 25 B.R. 621 (Bankr. N.Y. 1982).

In this case the bankruptcy court found that a liquidation of a company under Cayman Islands law, although not exactly the same as a liquidation under the Bankruptcy Code, deserves comity. The bankruptcy court found that comity should be accorded after determining that the law, practice and procedure in the Cayman Islands appears to assure: (1) an economical and expeditious administration of the estate consistent with just treatment of all holders of claims; (2) the protection of claim holders in the U.S. against prejudice and inconvenience in the processing of claims; (3) the prevention of preferential or fraudulent disposition of property of the estate; and (4) distribution of proceeds of the estate is substantially in accordance with the order prescribed by the Bankruptcy Code. Such findings are not clearly erroneous.

Hoffman's argument in this regard is essentially jingoistic. She argues that our bankruptcy law is vastly superior to Cayman Islands law. Even if somehow that were objectively true, it is beside the point. Congress has laid out in § 304(c) the criteria to be considered. The bankruptcy court made a careful analysis of the statutory criteria and concluded that injunctive relief was appropriate. We conclude that the bankruptcy court did not abuse its discretion in granting National Warranty injunctive relief pursuant to 11 U.S.C. § 304.

### 3. IS THE INJUNCTION TOO BROAD?

The last issue we address is whether the bankruptcy court issued an overly broad injunction. We believe it did not. The broad injunctive relief, which is specifically permitted and typically granted in a section 304 case, is not unlike the

injunction which is automatic in a bankruptcy case pursuant to section 362 of the Bankruptcy Code. *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (1988). The purpose of the section 362 stay is to prevent a chaotic and uncontrolled scramble for the debtor's estate, thereby permitting systematic and equitable distribution. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6296. "But just as the automatic stay may apply to situations or actions that bear no relationship to its purpose so that the stay should be modified, terminated, annulled or conditioned for cause, 11 U.S.C. § 304(d)(1), it may be necessary after a 304 case is filed and relief granted to tinker with that relief to do justice in particular circumstances." *In re Banco Nacional de Obras y Servicios Publicos*, 91 B.R. at 664. Pursuant to section 304(b), the court in an ancillary proceeding is free to broadly mold appropriate relief in near "blank check" fashion without the necessity of trial when a party in interest does not controvert the petition, or after trial if there is controversion. *In re Culmer*, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982) (citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 324-325 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 35 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787).

## MOTIONS

The appellees have filed a flurry of motions as part of this appeal. They first filed a motion to dismiss Hoffman's appeal on the ground that she failed to comply with Fed. R. Bankr. P. 8006(a). Specifically, the appellees argue that because Hoffman filed her Statement of Issues, which was due on September 5, 2003 (Friday), on September 8, 2003 (Monday), her appeal should be dismissed. A timely notice of appeal is jurisdictional. The timely filing of the Statement of Issues is not. Moreover, a one day delay in filing the statement of issues is relatively insignificant, and does not warrant dismissal of Hoffman's appeal. The motion to dismiss is denied.

The appellees, in the alternative to dismissal of Hoffman's entire appeal, request partial dismissal of her appeal based on issues that were not raised at the August 5, 2003 trial, or resolved by the bankruptcy court's August 19, 2003 order. First, one appeals from an order of a court, not "issues." Moreover, there is no reason to partially dismiss Hoffman's appeal. The appellees may, of course, argue on appeal that any issue in question was not raised in the bankruptcy court, and therefore cannot be raised on appeal. The motion for partial dismissal is denied.

The appellees also filed separately a motion to strike portions of designation of the record and a motion to strike portions of Hoffman's appendix and brief. Filings indicated on the bankruptcy court docket entries as numbers 113, 114, 115, 116, 124, 129, 131, and 132 were filed after trial, and were not part of the record. Hoffman concedes they should not be part of the record, and to the extent they are included in Hoffman's appendix, they are stricken.

The balance of the motions filed by the appellees relates to evidence offered and rejected by the bankruptcy court. Again, Hoffman concedes that such evidence was not admitted at trial. While such evidence is properly part of the record, since the bankruptcy court did not consider them as evidence, we do not consider them either. The appellees' motions to strike are otherwise denied.

## CONCLUSION

Because it correctly determined that National Warranty was the debtor in a foreign proceeding and properly issued an injunction of an appropriate scope, we affirm the order of the bankruptcy court.

14

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.