In re Petition of Thomas HACKETT, Official Liquidator of Fidenas International Bank Limited, Debtor in a Foreign Proceeding.

Bankruptcy No. 95–B–40667(BRL).

United States Bankruptcy Court,
S.D. New York.

July 14, 1995.

Dechert Price & Rhoads by Joel H. Levitin, New York City, for petitioner.

Richard D. Gaines & Associates, P.C. by Richard D. Gaines, New York City, for Martin B. Hirsh.

## DECISION ON MOTION FOR SUMMARY JUDGMENT ON AMENDED PETITION UNDER SECTION 304 OF THE BANKRUPTCY CODE.

BURTON R. LIFLAND, Chief Judge.

Thomas Hackett (the "Petitioner"), the official liquidator of Fidenas International Bank Limited ("Fibank"), appointed by the Supreme Court of the Bahamas on January 27, 1995, moves for summary judgment on that portion of his amended petition under section 304 of the Bankruptcy Code (the "Amended Petition"), seeking an order enjoining the commencement or continuation of all litigation against the Petitioner and his property interests. Fibank is a banking institution chartered under Bahamian law. The Amended Petition was served on all known creditors and parties in interest located in the United States. A number of these parties have already turned over, or agreed to turn over, property claimed by the Petitioner. The only response to the Amended Petition relating to the requested injunctive relief was filed by Martin Hirsh, the plaintiff in an action commenced in the Supreme Court of the State of New York against Fibank and other unrelated parties (the "New York Action").

### Background

Fibank is currently the subject of liquidation proceedings in the Commonwealth of the Bahamas (the "Bahamian Proceeding") pursuant to an order of the Supreme Court of the Bahamas dated October 4, 1994. Under Bahamian law, the Petitioner, as Official Liquidator, is required to take control of all assets of Fibank, wherever located, and to marshall them for liquidation and ultimately an orderly and equitable distribution to Fibank's creditors. On February 14, 1995, the Bahamas Supreme Court entered an order authorizing the commencement of this proceeding under section 304 of the Bankruptcy Code. Accordingly, the Petitioner commenced this case on February 16, 1995 and filed the Amended Petition on March 16, 1995.

Hirsh commenced the New York Action in November 1992 against Fibank, three other named defendants and innumerable "John Doe" defendants seeking to recover stock and warrants of International Sensor Technologies, Inc. ("IST"), which Hirsh alleged were wrongfully acquired by Fibank. In October 1993, the New York Supreme Court dismissed five of the six causes of action and allowed one cause of action to proceed against Fibank, namely a claim for replevin. However, as is set forth below, the Supreme Court specifically held that the surviving cause of action was compensable in money damages.

### Discussion [1]

Rule 56 of the Federal Rules of Civil Procedure, made applicable herein through Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is appropriate only when there is no genuine issue as to any material fact such that the moving party is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(c); Fed.R.Bankr.P. 7056. The moving party has the burden of demonstrating the absence of any genuine issue of material fact, but all inferences as to the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As Rule 56(e) specifically states, a "party may not rest upon the mere allegations or denials of [an] adverse party's pleading, but ... must set forth con-

---

1. This court has jurisdiction over this case pursuant to 11 U.S.C. § 304 and 28 U.S.C. § 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1410(b).

crete particulars," and bring to the Court's attention some affirmative indication that their version of relevant events is not a meritless allegation. *See SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Without conflicting oral or documentary evidence on material facts, there is nothing to try. Thus, a summary judgment motion is the time to show the court that such conflicting evidence exists. *In re Hourani*, 180 B.R. 58, 63 (S.D.N.Y.1995).

■ Under Local Bankruptcy Rule 13(h), on any motion for summary judgment, the parties must submit "separate, short and concise statement[s]" of the material facts as to which each party contends there is, or is not, as the case may be, a genuine issue to be tried. While Hirsh contends that disputed issues of fact exist, he failed to submit a statement setting forth precisely what those disputed issues are and has failed to otherwise articulate such issues.[2] Moreover, under Local Bankruptcy Rule 13(h), all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement to be served by the opposing party. *See* Rule 13(h), United States Bankruptcy Court, Southern District of New York, Local Bankruptcy Rules. Additionally, at the hearing on this motion, it was clear that the only disputed issues raised by Hirsh concern issues of law, not fact material to the outcome, and thus, summary judgment is appropriate.

Hirsh's objections to the Amended Petition are limited to the Petitioner's request for an order enjoining the continuation of his 1992 New York Action. Generally, the bases for his objections, which are more fully discussed below, relate to the treatment of his claim against Fibank under Bahamian law and the effect of such treatment on my consideration of the factors set forth in section 304(c) of the Bankruptcy Code.

### Section 304 of the Bankruptcy Code

■ While this nation's preparedness to grant deference to the laws and proceedings of other nations is considerable, it is not unlimited. *In re Hourani*, 180 B.R. at 64. Deference should only be given to those insolvency proceedings that provide a reasonable degree of certainty that the consideration of all parties' rights will be fair and impartial. *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico*, 44 F.3d 187, 191 (3d Cir.1994). If, after a review and analysis of both substantive and procedural aspects of non–U.S. law, it is found that the foreign proceedings are in keeping with U.S. notions of justice, deference to those proceedings is warranted by comity. *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 998–1000 (2d Cir.) *cert. denied*, —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993). Due to the absence of an international treaty, this nation's recognition of the insolvency systems of others and grant of access to its courts is embodied in section 304 of the Bankruptcy Code and the emerging caselaw that has developed from the statute. *In re Hourani*, 180 B.R. at 64. In addition, more recent initiatives are serving to give guidance for the treatment of cross-border problems. These initiatives include the International Bar Association's (the "IBA"), development of a "Concordat,"[3] as well as an ongoing development of suggested provisions of insolvency law, for adoption by individual nations,

**2.** While an affirmation of Hirsh's attorney was filed with Hirsh's opposition to the Petitioner's motion, no affidavit by Hirsh was filed. The attorney's affirmation submitted is procedurally insufficient to oppose the motion and raise material issues of fact that defeat the motion for summary judgment. *See, In re Esposito*, 44 B.R. 817 (S.D.N.Y.1984); *Silver, Feigen & Drucker v. Carnegie Industries, Inc. (In re Carnegie Industries, Inc.)*, 8 B.R. 983, 986 (S.D.N.Y.1981). Additionally, a 13(h) statement, unserved and unfiled and subsequently proffered to the Court by Hirsh's attorney in the midst of the hearing on this motion, was rejected as untimely.

**3.** Recognizing that the subject of cross-border insolvencies is rarely addressed in treaties and

that international commerce will be encouraged if general guidelines were established for the treatment of cross-border insolvencies, the IBA has proposed a concordat to be used in developing solutions to individual cross-border insolvencies (the "Concordat"). *See*, 6A, *Norton Bankruptcy Law and Practice 2d*, § 152:66, pp. 152–156 (1994); M. Sigal, K.E. Wagner, J.A. Barrett, E.D. Flaschen, E.B. Leonard, H.L. Goodman, *The Law and Practice of International Insolvencies, Including a Draft Cross–Border Insolvency Concordat*, Annual Survey of Bankruptcy Law, 1 (1994–1995). The Concordat is currently up for consideration and adoption in revised form by the section of Business Law of the IBA at its twenty-fifth annual meeting in Paris, France in

under the sponsorship of the United Nations Commission on International Trade Law ("UNCITRAL").[4] These initiatives serve to inform and provide a measure of guidance for a Court's consideration of the precatory provisions in section 304 of the Bankruptcy Code.

■ Initially, I note that, in connection with another bank liquidation, this Court has previously reviewed Bahamian liquidation laws and procedures and found that Bahamian liquidations comport with section 304(c) of the Bankruptcy Code and the principle of equality of distribution. *In re Culmer*, 25 B.R. 621, 629–632 (S.D.N.Y.1982) ("the liquidation laws of the Bahamas are in harmony with those of the United States and must be afforded comity."). *See also, In re Spanish Cay Co., Ltd.*, 161 B.R. 715, 726 (S.D.Fla. 1993).[5]

With respect to Bahamian law, Hirsh attempts to distinguish his claim against Fibank as something other than that of an unsecured claim. In so doing, Hirsh posits that there is no provision for treating his claim under the distribution scheme of Bahamian law because, he contends, under that law there is no reference to the resolution of disputed claims based on superior title to property nor are there provisions for treating "even creditors of contested unliquidated claims as creditors."

Among other things, the New York Supreme Court has previously determined, in denying Hirsh's request for an order enjoining the transfer of IST stock held by Fibank, that since any interest of Hirsh in the shares of such stock, and the value thereof, could be fixed at trial, damages would be sufficient to compensate him. *See Hirsh v. Continental Stock Transfer & Trust Co.*, Index No. 18882/92, Decision of Justice Walter M. Shackman, dated September 18, 1992. Accordingly, Hirsh's claim for damages is an unliquidated, disputed claim against Fibank. In that regard, and contrary to Hirsh's contention, under Bahamian law, there are specific procedures for the resolution of such claims and any additional claims that Hirsh may assert. *See, In re Culmer*, 25 B.R. at 630.

Hirsh also objects to the requested relief on the grounds that (i) it would be inconvenient, unduly burdensome and expensive for Hirsh to litigate his claim in the Bahamas, especially in light of the fact that the New York Action is ready for trial; (ii) all parties other than Fibank are in the United States; and, (iii) Hirsh was not considered a creditor of Fibank nor treated, and noticed immediately, as a creditor of Fibank, upon the commencement of the Bahamian liquidation proceeding.

Hirsh's own papers belie his contention that the New York Action is ready for trial as he has not yet commenced discovery nor did he pursue discovery in the intervening years since Justice Shackman's decision of September 18, 1992 and early 1995. The New York Action has essentially been dor-

---

September 1995, prefatory to final adoption by the IBA as a guide for management of cross-border insolvencies.

4. The UNCITRAL initiatives dealing with, *inter alia*, access and recognition of foreign representatives, have been carried out, in part, through a series of reported judicial colloquia held in conjunction with INSOL International, a worldwide association of insolvency professionals. Both the UNCITRAL/INSOL and Concordat projects have been aided by extensive participation by judges and insolvency professionals drawn from scores of civil law and common law nations.

Although this Court's conclusions at the foot of this decision are supported by the facts and law set forth in this Discussion section, the outcome is consistent with the principles developed in the Concordat and the UNCITRAL/INSOL projects.

5. I note, additionally, that the Bahamian courts have also afforded comity to the bankruptcy courts of this country. *See, In the Matter of Commodore Electronics Ltd.*, Action No. 473, Supreme Court of the Commonwealth of the Bahamas, Sawyer, J. (Decision dated March 27, 1995). In *Commodore Electronics*, the Bahamian Court approved a protocol established by the Bahamian liquidators and the Unofficial Committee of Unsecured Creditors acting in parallel bankruptcy proceedings pending in this Court for the conduct of the dual proceedings. In overruling an objection to the approval of the protocol, the court explained that:

[T]he main concern of this court … is that all creditors should be able to benefit from all sums which the liquidators may be able to collect, not just Bahamian creditors and I am not prepared to put a "ring fence" around either the assets or the creditors to be found in any one jurisdiction as opposed to another jurisdiction.

*Id.* at 6.

mant. Further, Hirsh's argument that he will be prejudiced and inconvenienced in the processing of his claim because he will have to litigate his suit in the Bahamas, is also unavailing. In rejecting an identical argument of a creditor in the *Brierley* case, Judge Brozman aptly explained:

> One can surmise that there will be some delay and, if travelling to hearings [abroad] is called for, possible enhanced costs for [the claimant]. But the prejudice and inconvenience of which [the claimant] complains is typical of what every U.S. creditor in a sizeable domestic case encounters when it is forced to litigate its claim. As the *Gercke* court aptly noted, "[i]t is doubtful that under § 304 Congress expected a foreign bankruptcy proceeding to be less prejudicial and inconvenient than a United States bankruptcy case before injunctive relief would be granted." ...
> Moreover, we unhesitantly require foreign creditors to litigate in our courts if they wish a distribution from the debtor's estate. It is thus difficult to label as so prejudicial and inconvenient to U.S. creditors as to warrant denial of injunctive relief that which we require of foreign creditors in our own cases.

*Petition of Brierley,* 145 B.R. 151, 163 (S.D.N.Y.1992) (quoting *In re Gercke,* 122 B.R. 621, 630 (D.C.1991)).

Moreover, Hirsh's argument that enjoining the prosecution of the New York Action would result in preferential treatment of other Fibank creditors under section 304(c)(3) of the Bankruptcy Code is misplaced. The concern of section 304(c)(3) of the Bankruptcy Code is with dispositions of property of the estate outside of the bankruptcy proceeding, not with the question addressed by section 304(c)(1) of just treatment of all holders of claims in the resolution of claims. *See In re Gercke,* 122 B.R. at 630. Allowing or not allowing the New York Action to go forward will have no impact on the prevention of preferential transfers of property of the Fibank estate.

As to Hirsh's remaining arguments, it appears from the affidavit of Fibank's counsel involved in the New York Action that the only cause of action remaining in that case involves Fibank alone. Accordingly, Hirsh's argument regarding his perceived inconve-

nience and expense of prosecuting a multi-party proceeding in two forums is unfounded. I also find no merit to Hirsh's contention that he received inadequate notice of the Bahamian Proceeding. At a minimum, he has had notice of the Bahamian Proceeding since the execution of a stipulation relating to this motion on April 15, 1995 and, from what I can glean from his own papers, probably earlier. As I am advised, and the record reflects, that the last date for filing proofs of claim (the "Bar Date"), in the Bahamian Proceeding is August 31, 1995, I am comfortable that Hirsh has received adequate notice, well in advance of that date. Accordingly, based on the foregoing, Hirsh's objections to the relief requested are overruled. And, if so inclined, he may file an appropriate claim in the Bahamian proceeding before the expiration of the Bar Date.

Upon consideration of all the factors set forth in section 304 and in an effort to assist the economical and expeditious administration of the Bahamian Proceeding and finding that the Petitioner has set forth sufficient grounds for the relief requested, the Petitioners' motion is granted.