**In re Petition of J.S. WARD and N. Allen, as Joint Liquidators of Zambia Airways Corporation Limited (In Liquidation), Debtor in Foreign Proceedings.**

**Bankruptcy No. 96 B 44240 (JLG).**

United States Bankruptcy Court, S.D. New York.

Oct. 3, 1996.

As Corrected Oct. 10, 1996.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for the Bank of New York and JCPL Leasing Corp.

Schulte Roth & Zabel, New York City, for Zambia Airways Corporation Limited.

## MEMORANDUM DECISION ON MO-TION FOR ORDER DISMISSING ANCILLARY PETITION

JAMES L. GARRITY, Jr., Bankruptcy Judge.

The Bank of New York ("BONY") and JCPL Leasing Corp. ("JCPL" and together with BONY, the "movants") move to dismiss the petition filed by Jack Stephen Ward and Nicholas Charles Allen ("petitioners" or the "liquidators"), as the joint liquidators of Zambia Airways Corporation Limited (In Liquidation) ("ZAC"), under § 304 of title 11, United States Code (the "Bankruptcy Code"). We deny the motion.

### Facts

The facts, as established in the papers submitted by the parties, are as follows. We understand that these facts are not in dispute. ZAC is incorporated under the Zambian Airways (Dissolution) Act No. 1979, and was the national airline for the Republic of Zambia until the end of 1994. It is wholly-owned by Zambia Industrial and Mining Corporation Limited ("ZIMCO"), a government owned or "para-statal" organization. Petitioners commenced this § 304 proceeding on August 8, 1996.

The relevant Zambian bankruptcy laws are embodied in the Companies Act, Chapter 686 of the Laws of Zambia, as amended (the "Act"), and the United Kingdom Companies (Winding–Up) Rules of 1929 (the "1929 Rules"). See Act § 230.2. A new Companies Act became effective in Zambia on February 1, 1995. Because ZAC's voluntary winding up predates the effective date of the new statute, the rules and procedures (with certain exceptions pertaining to the priority of employee wage claims) set forth in the Act apply to the proceeding. Winding-up proceedings under the Act are either "judicial" or "voluntary". Id. §§ 137 and 180. On December 4, 1994, ZIMCO, as ZAC's sole shareholder, passed an extraordinary resolution under § 180 of the Act, thereby commencing ZAC's voluntary winding-up proceeding. In substance, that resolution states that based on the Zambian government's determination that ZAC should be placed into voluntary liquidation, and the ZAC board's recommendation to pursue that course of action, ZAC should be wound up voluntarily. It also resolves to appoint petitioners as ZAC's joint liquidators. They were duly appointed as such pursuant to an extraordinary resolution passed on December 9, 1994. On December 15, 1994, they filed notice of ZAC's winding up and their appointment with the Zambian Registrar of Companies, see id. § 184(k), and caused a copy of that notice to be published in the Zambian government Gazette. See id. § 183. Similar notices were published in various national or international periodicals.

The liquidators conducted an initial creditor meeting on December 30, 1994. See id. §§ 185(1) and (2). Approximately 300 creditors attended in person or by proxy. Under § 185 of the Act, creditors attending the initial meeting must determine whether to seek appointment of a substitute liquidator and/or the formation of a committee of inspection. At the initial meeting, the creditors ratified the petitioners' appointment and resolved to appoint a committee of inspection (the "Committee") consisting of two employee representatives, two representatives of corporate creditors and one representative of general unsecured creditors. Pursuant to §§ 185(3) and (4) of the Act, that appointment was confirmed by the High Court of Zambia (the "High Court") on May 9, 1995. Only unsecured creditors holding non-contingent unsecured claims can vote on issues presented at the initial meeting. See 1929 Rules §§ 138–40. BONY representatives appeared at the meeting but were not admitted. According to petitioners, they failed to bring appropriate proxies or identification. BONY contends that its representatives were wrongfully excluded from the meeting. In March or April of 1995, a member of the Zambian Ministry of Finance was nominated to monitor and coordinate the government's

interest in ZAC's liquidation. A representative of the Zambian government now chairs the Committee.

ZAC's U.S. assets include real property located at 137–42 223rd Street, Laurelton, New York. ZAC also asserts an interest in two ATR aircraft and related spare parts which are the subject of two U.S. proceedings, including an action currently pending in the United States District Court for the Southern District of New York. That litigation was commenced by movants in June 1995. In it, they seek, among other things, (i) a declaratory judgment that a claim asserted by Meridien BIAO Bank Tanzania Limited for the return of $15,150,000, representing proceeds of collateral that had been pledged to secure a loan to Meridien International Bank Limited ("MIBL"), should be rejected, and that BONY is entitled to retain that money in satisfaction of amounts owed to it by MIBL, (ii) "in the nature of interpleader", recovery against proceeds from the sale of the two aircraft and parts in which ZAC asserts an interest which are now held by JCPL as BONY's nominee, and (iii) also "in the nature of interpleader", a declaratory judgment that BONY, in the event it does not prevail on its other causes of action, is entitled to apply against amounts owed to it certain funds on deposit in bank accounts maintained in the names of Meridien BIAO Bank Zambia Limited ("Meridien Zambia") and certain affiliates. Ancillary cases with respect to MIBL and Meridien Zambia are also pending before this Court.

### Discussion

■ Movants argue that this case must be dismissed because ZAC's voluntary winding up is not a "foreign proceeding" under § 304 of the Bankruptcy Code. Section 304(a) states that "[a] case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative." A "foreign proceeding" is

[a] proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

11 U.S.C. § 101(23). Because the term "proceeding" is not defined in the Bankruptcy Code, we presume that Congress intended that it be given its ordinary meaning. *See Petition of Tam*, 170 B.R. 838 (Bankr. S.D.N.Y.1994) (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993)). We construe it to mean

'the form and manner of conducting juridical business before a court or judicial officer' [extending to] 'administrative proceedings before agencies, tribunals, bureaus, or the like.'

*See Petition of Tam*, 170 B.R. at 842 (quoting BLACK'S LAW DICTIONARY 1204 (6th ed. 1990)).

Judicial winding-up proceedings are commenced by application to the High Court and end with an order of that court dissolving the corporate entity. *See* Act § 139 ("[a]ny application to the Court for the winding up of a company shall be by petition ..."), § 171 ("[w]hen the affairs of the company have been completely wound up, the Court shall make an order that the company be dissolved from the date of such order and the company shall be wound up accordingly"). A voluntary winding up is not commenced by application to the High Court. It is deemed commenced upon resolution under § 180 authorizing such winding up. *Id.* § 181. The High Court does not issue an order dissolving the company when it is wound up. The company is deemed dissolved three months after the appropriate return is filed with the Zambian Registrar of Companies. *Id.* § 194.

■ Those aspects of a voluntary winding up are relevant to, but not dispositive of, whether it is a "foreign proceeding." Relief under § 304 is available to foreign representatives in non-judicial proceedings. *See, e.g., In re Ocana*, 151 B.R. 670 (S.D.N.Y.1993) (statutory reorganization of Panamanian insurance company under protection of Panamanian National Reinsurance Commission); *In re Hackett*, 184 B.R. 656 (Bankr.S.D.N.Y.

1995) (official liquidation of debtor-bank chartered under Bahamian law); *In re Banco de Descuento,* 78 B.R. 337 (Bankr.S.D.Fla. 1987) (out-of-court liquidation of Ecuadorian bank under supervision of Superintendent of Banks of the Republic of Ecuador). Those cases are distinguishable because a Zambian voluntary winding-up proceeding is conducted without administrative, governmental or quasi-governmental oversight. The Zambian government's interest in ZAC's case is as its shareholder and as the entity obligated to satisfy the claims of ZAC's 1300 former employees, which it will do outside the provisions of the Act. The government plays no regulatory or supervisory role in this winding up other than to collect fees. *See* Act § 230.3. The Zambian Registrar of Companies also operates in a ministerial capacity. *See, e.g., id.* §§ 144, 172, 184(k) and 194 (directing Registrar to make minute book notations of commencement of liquidation and dissolution, and directing liquidators to inform Registrar of their appointment and meeting of creditors).

Under the Act, all creditors must receive notice of a voluntary winding up, and an initial creditors' meeting must be held promptly after the liquidator is appointed. *Id.* § 185(1). Creditors are not necessarily bound by the company's selection of the liquidator. At the initial creditors' meeting, creditors must determine whether to apply to the High Court to replace the liquidator, to appoint a joint liquidator or to appoint a committee of inspection. *Id.* § 185(2). "[I]f the creditors so resolve, an application may be made accordingly to the [High] Court at any time, not later than fourteen days after the date of the meeting, by any creditor appointed for that purpose." *Id.* On any such application, the High Court acts with "regard to the interests of the creditors and contributories of the company. . . ." *Id.* § 185(3). At any time, any creditor can cause the High Court to wind up the affairs of the company judicially, provided it persuades the court "that the rights of such creditor will be prejudiced by a voluntary winding up." *Id.* § 196.

Like an official liquidator, the liquidator in a voluntary winding up may not without court approval personally have dealings with the company or its assets, or enter into transactions on behalf of the company with entities related to him or in which he has an interest. 1929 Rules §§ 158–60 (applicable to liquidators in both voluntary and judicial liquidations). For due cause shown, the High Court may remove any liquidator and appoint another to act in a voluntary winding up. *Id.* § 192.

In a voluntary winding up, the liquidator's general mandate is to pay the debts of the company and adjust the rights of the contributories among themselves, with the company's assets being applied in satisfaction of its liabilities in legal order of preference and any surplus being distributed to the contributories. Act §§ 184(a) and (j). As such, it mirrors the duties and responsibilities of an official liquidator in a judicial winding up. *See, e.g., id.* §§ 149, 150, 154. The liquidator in a voluntary winding up has all the powers of the company's board of directors and without court approval can exercise all the powers of an official liquidator under the Act. *Id.* §§ 184(b), (c), (e), (g) and 149–50. In voluntary and judicial winding ups the Act invalidates "fraudulent preferences" and in appropriate circumstances, floating charges on the company's property. *Id.* §§ 211, 212.

As soon as practical after their appointment and receipt of financial information concerning the company, liquidators in judicial and voluntary liquidations must submit a preliminary report to the High Court detailing, among other things, the estimated amount of the company's assets and liabilities, if the company has failed, the causes of that failure, and whether there should be further inquiry into any matter relating to the company's promotion, formation or failure, or the conduct of its business. As necessary, those liquidators must make further report to the court. *Id.* §§ 156(2), 157. The High Court may direct the company's officers or directors to appear to be publicly examined on company matters. The liquidators and any creditor or contributory of the company may participate in the examination. *Id.* §§ 156(1), (3), (4), and 157.

Any arrangement entered into between a company and its creditors in a voluntary

winding up is binding on creditors only if they approve it by 75% in number and value. *Id.* § 187. Dissenting creditors or contributories may appeal to the High Court, which can amend, vary or confirm the arrangement. *Id.* §§ 188 and 207.

The liquidator in both voluntary and judicial liquidations may apply to the High Court for an order compelling any insider of the company to return any company assets, or to satisfy any company debt for which he is deemed liable by reason of misfeasance or breach of trust. *Id.* § 213. The liquidator must prosecute any officer suspected of intentionally defrauding the company, destroying its records, making materially false statement concerning its financial condition, or failing to keep proper books and records and any person suspected of causing the company to engage in fraudulent trading. Persons responsible for fraudulent trading by the company may also be prosecuted upon application to the High Court by any creditor or contributory. *Id.* §§ 214–15 and 217–20. Creditors can petition the High Court for leave to investigate the acts of the company's officers or directors. *Id.* § 213. Any orders entered by the High Court in a judicial or voluntary winding up are subject to appellate review. *Id.* § 198.

The claims allowance procedure is identical in a voluntary and judicial winding up: (1) the liquidator fixes a bar date by written actual and publication notice to creditors; (2) the liquidator examines and either approves or rejects, in writing, in whole or in part, each claim; and (3) aggrieved creditors are entitled to judicial review of the liquidator's determination, provided they petition the High Court for relief within 21 days of receiving the rejection notice.

■ As noted, a Zambian voluntary winding up is not strictly a judicial proceeding. However, the foregoing shows that it is conducted by a court-sanctioned liquidator having fiduciary-like duties who must act for the benefit of creditors and contributories. The duties and responsibilities of that liquidator are virtually identical to those of an official liquidator. There is substantial judicial oversight, and aggrieved creditors and/or contributories have, as of right, ready access to the

High Court and appellate courts to redress grievances regarding the conduct of the winding up. The voluntary winding up is conducted for the collective good of creditors and contributories pursuant to rules and procedures that are consistent with our notions fairness and due process. As such, we find that it is a "foreign proceeding" under § 304 of the Bankruptcy Code.

Movants rely on *Petition of Tam,* 170 B.R. 838 (Bankr.S.D.N.Y.1994), as support for their motion to dismiss. There the joint liquidators of the Estate of Asian Oceanic Holdings Limited ("AOHL") filed a § 304 petition in this court. The foreign debtor was a Cayman Islands corporation subject to a voluntary liquidation under the Cayman Companies Law, as amended. A creditor moved to dismiss the petition arguing that the voluntary liquidation was not a "foreign proceeding." The Cayman Companies Law gave AOHL's shareholders the option to liquidate the debtor voluntarily or pursuant to a judicial proceeding in the Cayman court and the joint liquidators conceded that the voluntary liquidation was not a judicial proceeding. *Id.* at 841. They insisted that it was a "foreign proceeding" under § 304(a) because: (i) it was conducted under the aegis of the Cayman Registrar of Companies, which was charged with reviewing and approving the actions taken by the Cayman liquidators; (ii) creditors could petition the Cayman court to review the actions taken by the liquidators; and (iii) the winding up was statutorily sanctioned by the Cayman Companies Law. *Id.* at 841–42. We held that the voluntary winding up did not qualify as a "foreign proceeding" and dismissed the § 304 petition. *Id.* at 846. We found that the liquidation was being conducted without the oversight of the Cayman Registrar of Companies or any other Cayman governmental agency, instrumentality or authority, that creditors had no right to be heard on matters relating to the conduct of the winding up, and that the liquidators were under no obligation to report to creditors unless the proceeding continued for more than one year. *Id.* at 843.

*Tam* is distinguishable from this case. Although there are many similarities between Zambian and Cayman law, we do not under-

stand those laws to be identical. Significantly, under Zambian law, there is active court supervision of the voluntary winding up, and ready access to the High Court and appellate courts by creditors and contributories. Equally important is that the right of creditors and contributories to participate and be heard in proceedings is virtually identical in judicial and voluntary liquidations. The Zambian winding up is conducted for the collective benefit of all creditors and contributories in accordance with procedures that are not at odds with our notions of due process. We did not find any of these factors present in *Tam*.

Alternatively, movants contend that ZAC's case must be dismissed because Zambian principles and procedures are not entitled to recognition under principles of comity. That is premised on movant's contention that Zambian attorney Albert Mark Wood, who submitted an affidavit in support of the § 304 petition filed on behalf of ZAC's affiliate Meridien Zambia, failed to disclose that he and his law firm represented BONY "in the ZAC matter" until last year, when that relationship was discontinued due to, among other things, disputes concerning fees and services. According to movants, Mr. Wood's conclusion that his alleged conflict of interest neither precludes his present retention by Meridien Zambia, nor even need be disclosed, together with the purported ability of the government-controlled Bank of Zambia to obtain the services of BONY's former counsel in a proceeding commenced against its interest, demonstrate the inherently prejudicial nature of Zambian legal proceedings. Thus BONY argues that because Mr. Wood—who has not submitted an affidavit in this matter—suffers from an alleged conflict of interest and allegedly may have breached his ethical obligations as an attorney, the entire Zambian legal system is flawed. Absent proof that the Zambian legal system is repugnant to our own or is substantially unfair, we should grant comity to the Zambian proceeding. None has been presented. *Compare Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 305 (3d Cir.1972) ("There is nothing here which indicates that the Zambian system of jurisprudence would be unfair to non-Zambians asserting claims in the Zambian courts"). Even assuming, *arguendo*, the truth of movants' contentions about Wood, they have not demonstrated that this case should be dismissed. That is not to say that the underlying petition satisfies the provisions of § 304(c) of the Bankruptcy Code or that petitioners should be granted relief under § 304(b). Those issues are not before us.

Finally, portions of the Act and the 1929 Rules were annexed as an exhibit to the unsworn and undated Supplemental Declaration of J.S. Ward submitted in opposition to this motion. Movants object to the admissibility of that document, arguing that it does not comply with 28 U.S.C. § 1746 because it is undated and does not contain a statement by the declarant to the effect that he declares under penalty of perjury under U.S. law that the contents of the declaration are true and correct. They do not dispute that the excerpted portions of the Act and the 1929 Rules are true and correct. Moreover, at our request, the liquidators supplied movants and the court with complete texts of the Act and the 1929 Rules. Our analysis of Zambian law is based on our review of those materials rather than the assertions contained in the Mr. Ward's supplemental declaration. BONY also urges us to disregard the declarations submitted in support of ZAC's § 304 petition and in opposition to this motion to dismiss by M.W. Forrest. It contends that Mr. Forrest's summary of relevant Zambian law is in many cases incorrect and suggests that his supplemental declaration sworn to on August 25, 1996 indicates that certain statements previously made by him were untrue and that this supports their dismissal motion. As noted previously, we rely upon our independent review of Zambian law in assessing whether ZAC's voluntary winding up is a "foreign proceeding". In his supplemental declaration, Mr. Forrest ascribes his admitted error in stating previously that ZAC's Zambian winding up and the appointment of the liquidators were effected pursuant to creditor resolutions, when they were in fact shareholder resolutions, to his assumption that because those resolutions were subsequently confirmed by ZAC's creditors, they automatically related back to the

December 4 and 12, 1994 shareholder resolutions. He also explains that the "regular reports" referred to in his previous declarations are not sent directly to creditors, but are made available to them for inspection. Those clarifications, whether or not made in response to pleadings filed by BONY, provide no basis for dismissing this proceeding.

### *Conclusion*

We deny the motion to dismiss.